Argued November 9, 1908, decided March 23, 1909.

## STATE *v.* WRIGHT.

[100 Pac. 296; 21 L. R. A. (N. S.) 349.]

CONSTITUTIONAL LAW—CLASS LEGISLATION—LAW LICENSING PEDDLERS.

1. Inasmuch as Laws 1905, p. 339, c. 206, requiring a license to peddle stoves, ranges, wagons, etc., operates unequally, in that it requires one peddling two or three harmless and useful articles to pay a large fee for the privilege, and indirectly permits peddlers of other articles, not named therein, whether harmful or not, to do so without restriction or limitation, it is void as being arbitrary and class legislation.

CONSTITUTIONAL LAW — CLASS LEGISLATION — TAXING OR LICENSING CALLINGS OR TRADES.

2. The State may impose a tax, or require a license, from persons engaged in certain callings or trades, without being bound to include all persons or all

property that may be legitimately taxed for governmental purposes; but the classification must be on some reasonable basis, and the law, when enacted, must apply alike to all engaged in the business or occupation.

From Wasco: WILLIAM L. BRADSHAW, Judge.

.The defendant, D. Y. Wright, and another were convicted and fined for peddling without a license, in violation of Laws 1905, p. 339, chap. 206, and they appeal.

REVERSED.

For appellants there was a brief with oral arguments by *Mr. Arthur C. Lyon* and *Mr. William H. Wilson.*

For the State there was a brief with oral arguments by *Mr. Andrew M. Crawford,* Attorney-General, and *Mr. Fred W. Wilson,* District Attorney.

MR. JUSTICE BEAN delivered the opinion of the court.

The defendants were arrested for a violation of chapter 206, p. 339, Laws 1905, which provides that any peddler, hawker, or itinerant vendor, who shall peddle, hawk or vend "any stoves, ranges, wagons, carriages, buggies, carts, surreys, or other kinds of four-wheeled or two-wheeled vehicles, or fanning mills or similar goods, wares, or merchandise, within such county," without first having obtained a license therefor, as provided in section 1 of such act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $300 or more than $500 or imprisoned in the county jail not less than one month or more than one year. The case was submitted to the court below upon an agreed statement of facts, from which it appears that the Spaulding Manufacturing Company is a co-partnership engaged in the manufacture, for sale, of buggies and wagons, at Grinnell, Iowa, and all members of such firm reside in that State. The defendant Wright is a citizen of New York, and Ogan of Pennsylvania, and both were employed, on a salary, by the Spaulding Company to sell in this State buggies manufactured by them. Wright was a traveling solicitor or salesman, and Ogan was the

superintendent of the Spaulding Company's business in Oregon. Neither the company nor defendants had a store or permanent place of business in the State, but the company had a few vehicles—not to exceed 15 or 20, outside of those used exclusively as samples—in a storage warehouse in Shaniko, under Ogan's charge. The defendant Wright, in pursuance of his employment, went over the country soliciting orders for vehicles, using for that purpose samples, which he carried with him, and also a catalogue, showing many other styles. When he obtained an order for a buggy, he forwarded or delivered it to Ogan, who looked up the reputation and financial responsibility of the signer, and, if found satisfactory, directed that the order be filled and the rig delivered. If Ogan had no vehicle on hand corresponding to the order, as was frequently the case, he sent it to his principal at Grinnell, Iowa, and it was filled by sending the vehicle from the factory to Ogan, to be delivered to the purchaser. If, however, he had on hand in the storage warehouse a vehicle corresponding to the order, he directed that it be filled and the rig delivered from such warehouse. In June, 1908, Wright, as representative of the Spaulding Company, called on one F. E. Spoor, at his residence in Wasco County, showed him a sample buggy he had with him, and exhibited to him his catalogue. Spoor selected a vehicle from the catalogue, signed an order therefor, and gave Wright his note for $160, the purchase price. The order was then forwarded by Wright to Ogan, who directed that it be filled from the stock on hand in the warehouse at Shaniko, which was done accordingly. Upon these facts the defendants were both found guilty and adjudged to pay a fine, from which judgment they appeal, insisting that the law under which they were prosecuted is, as applies to them and the business in which they were engaged, void, because it contravenes Section 8, Article I, and Section 2, Article IV, and Section 1 of the fourteenth amendment to the

Constitution of the United States, which vests in Congress exclusive power to regulate interstate commerce, provides that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several states, and prohibits any state from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States, or deny any person within its jurisdiction the equal protection of the laws, and also that such law is in violation of Section 20, Article I of the Constitution of this State, which provides that no law shall be passed granting to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

1. The questions suggested have been exhaustively briefed and argued by the respective counsel, and much learning and ability have been displayed in their discussions, but we do not deem it necessary to consider all of them at this time, because we conclude that the law under which defendants were prosecuted is void, because it is arbitrary and class legislation. It is important to note at the outset that this case does not involve the right of the State to regulate the sale of articles which are, or may be, injurious to the public health or morals, but the question is whether it may arbitrarily require one, who is engaged in peddling any of two or three harmless and useful articles, to pay a large fee and obtain for the privilege a license, and permit peddlers of other articles, whether harmful or not, to do so, without restriction or limitation. In short, the question is whether the State can lawfully thus discriminate in favor of one class of peddlers and against others engaged in substantially the same business, solely because of the articles sold by them, when such articles are in no way dangerous to the health or morals of the community. That the State may, under its police powers, license and regulate the business of peddling by requiring those engaged therein to obtain a license is conceded. This, however, is because gross

frauds and cheats are likely to, or may, attend the business, if carried on by irresponsible and dishonest persons, and not because of the articles sold. And while it is possible the State may divide peddlers into different classes, requiring a license from one and not from the other, such classification, if valid at all, must be based upon some reasonable ground of differences, and not be an arbitrary discrimination between persons engaged in the same class of business. *Garrigan* v. *Thompson*, 17 S. D. 132 (95 N. W. 294); *State* v. *Montgomery*, 92 Me. 433 (43 Atl. 13).

A statute, which directly or by implication grants special privileges, or imposes special burdens upon persons engaged in substantially the same business, under the same conditions, cannot be sound, because it is class legislation, and an infringement of the equal rights guaranteed to all. *In re Yot Sang* (D. C.) 75 Fed. 983; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540 (22 Sup. Ct. 431: 46 L. Ed. 679); *State* v. *Conlon*, 65 Conn. 478 (33 Atl. 519: 31 L. R. A. 55: 48 Am. St. Rep. 227). The statute under consideration is plainly in violation of this principle. There is no pretense that it applies to the occupation of peddlers or itinerant vendors as a whole or generally. It requires persons engaged in peddling a few enumerated articles to obtain a license and pay an exorbitant, if not prohibitive, fee therefor, while peddlers of all other articles may exercise their calling without any restriction or restraint. It makes an arbitrary classification, based upon the articles sold, regardless of whether they are injurious or detrimental in any way. A peddler who sells stoves, buggies, or fanning mills, all of them legitimate and necessary articles, comes within the statute, but one who sells clocks, patent medicines, pianos, fruit trees, sewing machines, jewelry, dynamite, or any one of a thousand other articles, whether harmful or not, may do so without penalty and punishment, and without being required to pay a fee therefor. The busi-

ness of peddling, and its attendant evils, is, however, the same in either case. If evil consequences are likely to flow from it at all, these consequences will follow from the peddling of the exempted articles, as well as the prohibited ones. It certainly cannot be wrong to peddle stoves, buggies, or fanning mills, and right to peddle patent medicine, lightning rods, or dynamite. A peddler could go about the country selling to the same customer a stove, buggy, or fanning mill, and groceries, dry goods, or any other article not within the prohibited list, and under this statute, if he had no license, part of his sales would render him a criminal, while part would be praiseworthy and proper. Such a classification is purely arbitrary, and plainly denies the equal protection of the law to those against whom it is directed. The constitutional objection to it is that it operates unequally, in that it requires certain persons engaged in peddling a few enumerated, useful articles to obtain a license, and exempts others engaged in the same business, and therefore is void. *State* v. *Wagener,* 69 Minn. 207 (72 N. W. 67: 38 L. R. A. 677: 65 Am. St. Rep. 365) ; *State* v. *Gardner,* 58 Ohio, 599 (51 N. E. 136: 41 L. R. A. 689: 65 Am. St. Rep. 785) ; *State* v. *Bayer* (Utah), 97 Pac. 129; *In re Grice* (C. C.), 79 Fed. 627; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150 (17 Sup. Ct. 255: 41 L. Ed. 666).

2. It is true a State may impose a tax on, or require a license from, persons engaged in certain callings or trades, without being bound to include all persons or all property that may be legitimately taxed for governmental purposes. *Armour Packing Co.* v. *Lacy,* 200 U. S. 236 (26 Sup. Ct. 232: 50 L. Ed. 451) ; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540 (22 Sup. Ct. 431: 46 L. Ed. 679) ; *Singer Manufacturing Co.* v. *Wright,* 97 Ga. 114 (25 S. E. 249: 35 L. R. A. 497). But the classification must be on some reasonable basis, and the law, when enacted, must apply alike to all engaged in the business

or occupation. Thus an act requiring a license from plumbers is void as discriminatory if it exempts certain plumbers from its operation. *State* v. *Gardner,* 58 Ohio, 590 (51 N. E. 136: 41 L. R. A. 689: 65 Am. St. Rep. 785). So, also, a law requiring a peddler's license has been held to be void if it exempts certain favored individuals by reason of their residence or the goods sold by them. *Chaddock* v. *Day,* 75 Mich. 527 (42 N. W. 977: 4 L. R. A. 809: 13 Am. St. Rep. 468); *Commonwealth* v. *Snyder,* 182 Pa. 630 (38 Atl. 356); *Sayre Borough* v. *Phillips,* 148 Pa. 482 (24 Atl. 76: 16 L. R. A. 49: 33 Am. St. Rep. 842); *Ex parte Jones,* 38 Tex. Cr. R. 482 (43 S. W. 513); *State* v. *Wagener,* 69 Minn. 207 (72 N. W. 67: 38 L. R. A. 677: 65 Am. St. Rep. 565). And while the law in question does not on its face specially exempt the peddlers of any class of goods from its operation, it does indirectly, because it only requires a license from those engaged in peddling certain specified articles, composing a very small part of those usually and generally sold by persons engaged in the business mentioned.

Judgment reversed.                    REVERSED.