————————

Argued October 15, affirmed October 23, 1913; rehearing granted January 6, 1914.

Reargued February 13, former decision sustained May 19, 1914.

## Ex Parte CASE.

(135 Pac. 881; 141 Pac. 746.)

**Hawkers and Peddlers—"Peddler"—Statutory Definition.**

1. Section 4961, L. O. L., defines "peddler" to include every person who for himself or as agent of another goes from place to place, or from house to house, selling or offering to sell for future delivery, by sample or catalogue, at retail to individual purchasers, who are not dealers in the articles sold, any goods, wares or merchandise. Held, that the legislature was entitled to prescribe such definition for the term without reference to the fact that it extended the ordinary meaning of the word.

[As to the significance in law of the word "peddler," see note in 57 Am. Rep. 136. As to who is a peddler within licensing statutes or ordinance, see note in Ann. Cas. 1912D, 1289.]

Commerce—Interstate Commerce—What Constitutes.

2. Relator, under an agency contract for the sale of vehicles for an Iowa corporation, passed through the country from house to house with a catalogue and took an order for the sale of a vehicle to H., which order relator sent to the corporation's superintendent within the state, who, after satisfying himself as to the buyer's responsibility, delivered the vehicle from a stock· kept in storage, shipped, knocked down in carloads. Held, that interstate commerce involved in the shipment of the vehicles from Iowa to Oregon ended when the vehicles were placed in storage before sale, when they became part of the general mass of property in the state, and hence relator was not relieved from liability for violating the statute regulating peddlers on the theory that he was engaged in interstate commerce.

[As to transaction partaking of interstate commerce as doing business in state by foreign corporation, see note in Ann. Cas. 1913E, 1154.]

ON REHEARING.

Constitutional Law—Hawkers and Peddlers—Equal Protection of Laws—Regulation of Peddling.

3. Since Sections 4961–4967, L. O. L., relating to license to peddle goods, makes no discrimination among different individuals engaged in the acts defined by the law as constituting peddling, the law does not deny to one accused of its violation protection of the law equal to that granted to any other person in like situation.

[As to constitutional limitation upon the power to impose license or occupation taxes, see note in 129 Am. St. Rep. 249.]

Constitutional Law—Equal Protection of Laws—Regulation of Peddling.

4. That Sections 4961–4967, L. O. L., providing for licensing peddlers, excepts from its operation those engaged in peddling agricultural, farm or nursery products does not constitue such an unreasonable classification as to invalidate the act.

[As to "equal protection of laws" as a constitutional requirement, see note in 25 Am. St. Rep. 873.]

Constitutional Law—Equal Protection of Laws—Regulation of Peddling.

5. That Sections 4961–4967, L. O. L., providing for licensing peddlers, excepts from its operation sales to dealers does not invalidate the act.

Hawkers and Peddlers—License—"Peddling."

6. Though a stipulation in *habeas corpus* for the release of one convicted of peddling without a license showed only a single sale, it was sufficient to show the petitioner was peddling where it appeared that his customary procedure was to solicit orders which as a rule were filled from stock already shipped into the state, and the sale in question was not an exceptional one.

Statutes—Effect of Partial Invalidity.

7. That Sections 4961–4967, L. O. L., providing for licensing peddlers, is invalid as applied to persons engaged in purely interstate commerce does not render the law wholly void.

From Coos: John S. Coke, Judge.

Department 2.    Statement by Mr. Justice Eakin.

R. G. Case was charged in the justice's court with the crime of peddling without a license, namely, with a two-horse wagon he did wrongfully and unlawfully, outside the corporate limits of any city and town, peddle to Jim Hayes a two-seated, open-topped vehicle without first obtaining a license so to do, as provided by statute. He was tried in the said justice's court and convicted, and judgment was rendered against him that he pay a fine of $150 and the costs of the action, being committed to the custody of the sheriff until the fine should be paid. Thereupon he regularly obtained and caused to be issued from the Circuit Court a writ of *habeas corpus,* to which writ the sheriff filed a return, setting out the proceedings, the judgment against him, and the commitment until the fine should be paid. Petitioner demurred to the return on the grounds that his acts did not constitute peddling or any violation of the statute against peddling; that the complaint against him is based upon Sections 4961–4967, L. O. L., which said attempted enactment is unconstitutional, null and void, for the reason that it contravenes and violates the Constitution of the United States of America; that the said statute is unconstitutional, null and void as against the state Constitution. For the purposes of the trial upon the writ of *habeas corpus,* the facts were stipulated. After stating the proceedings in the justice's court, it is further stated, so far as material here:

"That the defendant, R. G. Case, is a citizen and resident of the State of California and is a commercial traveler employed as a canvasser on a salary and not on commission by the Spaulding Manufacturing Company, a copartnership, whose factory and principal

place of business is situated in Grinnell, Poweshiek County, Iowa. That the said R. G. Case, during the month of June, 1911, went about Coos County, Oregon, from house to house and place to place, with two horses and a wagon, soliciting orders for vehicles, using for that purpose sample vehicles which he carried with him and also a catalogue showing many other styles. That on the 23d day of June, 1911, the said R. G. Case called on Jim Hayes, at his residence in Coos County, Or. * * That thereupon said Hayes picked out a vehicle from said catalogue and signed a written order for it, which is in words and figures following [setting out the contract]. And gave his note in the sum of $60. This order and papers * * were delivered over by said Case to his foreman or superintendent, C. H. Hanson, at Roseburg, Douglas County, Oregon, by sending the same by mail. Said C. H. Hanson looked up the responsibility of said Jim Hayes. When an order for a vehicle is turned over to said C. H. Hanson by said R. G. Case, said Hanson looks up the reputation and financial responsibility of the signer and, if it is found to be satisfactory, directs that the order be filled and the rig delivered. If the said Hanson has no vehicle on hand at Roseburg corresponding to said order, as is frequently the case, the order is sent directly to the factory of the Spaulding Manufacturing Company, at Grinnell, Iowa, and the order is filled by sending a vehicle from the factory to said Hanson to be delivered by him in pursuance of said order. If said Hanson has on hand in the storage warehouse at Roseburg a vehicle corresponding to said order, he directs that the order be filled and the rig be delivered from said storage warehouse, but such a transaction is subject to the approval of the Spaulding Manufacturing Company, at Grinnell, and, if it is disapproved by them, the rig is 'pulled' and the order and notes are returned to the signer. In the transaction in dispute in this case the vehicle in question was one of a number of vehicles shipped in from Grinnell, Iowa, in a car load, knocked down, and which was set up and put together in a warehouse at Roseburg, Oregon. And this vehicle delivered to said Jim Hayes was from this small stock of vehicles already on hand

in the said storage warehouse of the Spaulding Manufacturing Company at Roseburg aforesaid. Said vehicle so delivered to said Hayes being in said storage warehouse at the time of the signing of the order by said Hayes. Said vehicle, as well as all the others belonging to the Spaulding Manufacturing Company in the State of Oregon, was in the constant possession of the Spaulding Manufacturing Company or its agents from the time of its manufacture and shipment up to the time of its delivery as aforesaid to said Hayes. * * Neither the Spaulding Manufacturing Company nor the defendant has a store or permanent place of business at Roseburg, Oregon, or at any other place within the State of Oregon, but the Spaulding Manufacturing Company has a few vehicles in a storage warehouse in Roseburg, Oregon, not to exceed 15 or 20 vehicles outside of those used exclusively as samples. * * ''

The demurrer to the return was overruled, and the petitioner refused to plead further. Whereupon the court dismissed the writ and remanded the petitioner to the custody of the sheriff, and the petitioner appeals.          AFFIRMED.   SUSTAINED ON REHEARING.

For appellant there was a brief with oral arguments by *Mr. A. C. Lyon* and *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Mr. George M. Brown,* Prosecuting Attorney, and *Mr. L. A. Liljeqvist,* Deputy Prosecuting Attorney, with an oral argument by *Mr. Brown.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Two points are relied upon on this appeal: (1) That petitioner's acts did not constitute peddling or a violation of the statute; and (2) that Section 4961–4967, L. O. L., under which the prosecution was had, is unconstitutional and void as to this petitioner, as it

contravenes and violates the Constitution of the
United States. As to the first question that the acts
of the petitioner did not constitute peddling, the stat-
ute (Section 4961, L. O. L.) defines the term "ped-
dler," as used therein: "The term 'peddler,' as used
in this act, means and includes the following persons:
(1) * * (2) Every person who, for himself or as
agent of another, goes from place to place or from
house to house, selling or offering to sell for future
delivery, by sample or catalogue, at retail, to individ-
ual purchasers who are not dealers in the articles sold,
any goods, wares, or merchandise"—petitioner con-
tending that this definition is not within the true mean-
ing of the word "peddler," and that the acts com-
plained of were not in violation of the statute. The
legislature has said by the language quoted that such
acts shall constitute peddling. Wherever the word
"peddler" is used in the act, it shall include the act
specified. The legislature could forbid these acts un-
der any name they might choose to give them. This
exact point was raised in *Re Wilson*, 19 D. C. 341 (12
L. R. A. 624), where it is said: "In the act before us,
the legislative assembly distinctly described the class
of persons they intended to include in the designation
of peddlers"; and that, if defendant came within that
definition, he was guilty: See, also, *Commonwealth* v.
*Gardner,* 133 Pa. 284 (19 Atl. 550, 19 Am. St. Rep. 645,
7 L. R. A. 666); *State* v. *Bristow,* 131 Iowa, 664 (109
N. W. 199); *State* v. *Schlenker,* 112 Iowa, 642 (84
N. W. 698, 84 Am. St. Rep. 360, 51 L. R. A. 347);
*Allport* v. *Murphy,* 153 Mich. 486 (116 N. W. 1070).
Cases are cited by petitioner as holding the contrary,
but they are cases where, by city ordinances, attempts
were made to include within the term "peddler" in
the charters other acts than those coming within the

meaning of the term, being beyond their charter powers so to do, and therefore they are not in point.

2. As to the second question, the law of 1905 providing that peddlers must be licensed was held void as discriminatory: *State* v. *Wright,* 53 Or. 344 (100 Pac. 296, 21 L. R. A. (N. S.) 349). And to avoid the defects in that statute the act of 1909 (Sections 4961–4967, L. O. L.) was adopted. The latter was before this court in the case of *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128), in which it was held, Mr. Justice MOORE writing the opinion, that so far as it relates to an agent of a resident of another state selling goods by order for future delivery, said order to be filled from the other state, it is an attempt to enact a tax on interstate commerce and for that reason is void. That decision reduces the issue here to the question of whether the acts of petitioner were dependent upon interstate commerce, as disclosed by the facts stipulated. This case differs from the case of *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128), in this: The facts in that case were: ''In negotiating such sales one of plaintiffs' agents, driving a pair of horses hitched to a wagon, canvasses a part of this state, and, if he finds a purchaser, a written order is taken for a specified style of carriage, to be furnished in 30 days, or as soon as transportation will permit, and thereupon another agent at Grinnell, Iowa, ships into Oregon the required vehicle, upon the delivery of which, by another of plaintiffs' agents, the sale is completed.'' Thus it will be seen that the orders were to be filled only from plaintiffs' house in Iowa, while in this case Hanson, another agent of the Spaulding Manufacturing Company, had in stock for it at Roseburg, Oregon, a small stock of vehicles in a storage warehouse from which the vehicle delivered to Hayes upon this purchase was shipped to him. It was one of a num-

ber of vehicles shipped from Iowa in car lot, knocked down, and was put together in the warehouse at Roseburg, Oregon. This sale or the delivery of the goods did not in any way depend upon interstate commerce. When the goods were unpacked at Roseburg, they became a part of the general mass of property in the state and were subject to the state laws as other property within the state. They lost their character as interstate shipments when delivered at their destination and offered for sale: *May* v. *New Orleans,* 178 U. S. 496 (44 L. Ed. 1165, 20 Sup. Ct. Rep. 976), *In re Kinyon,* 9 Idaho, 642 (75 Pac. 268, 2 Ann. Cas. 699), was a case similar to the present one, except that the goods sold were ordered from St. Louis, Missouri, and the opinion makes the distinction that where the goods, at the time of the sale, are within the state and under the control and care of the agent, both the property and the business are within the jurisdiction of the state and subject to its regulation and control for purposes of taxation and otherwise. This case is annotated in 2 Ann. Cas. 701. It is stated in the note that where goods are shipped into a state and stored in advance of the sales, and the orders taken and filled therefrom, the business is not interstate but local commerce, and the laws licensing or taxing the business are not unconstitutional on this ground. The note cites many authorities to that effect. The same statement of the law is found in a note in 14 Ann. Cas., at page 865, where many additional cases are cited: See, also, *Marshall Hardware Co.* v. *Multnomah County,* 58 Or. 469 (115 Pac. 150). Thus the petitioner cannot shield himself behind the interstate commerce law. If that would protect such a transaction as this, then the dealer might place a full stock of goods in Oregon and sell them in the same way, replenishing his stock from the east as other merchants do, and still avoid

taxes as well as license fees.   We find that the return of the sheriff to the writ is good as against the demurrer.

The judgment is affirmed.

AFFIRMED.   SUSTAINED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.

---

Former opinion approved May 19, 1914.

ON REHEARING.

(141 Pac. 746.)

In Banc.   MR. JUSTICE BURNETT delivered the opinion of the court.

The stipulation of facts in this case is reported at 135 Pac. 881, and need not be repeated here.

No reason is apparent why we should depart from the former decision with respect to the authority of the legislative assembly to enlarge upon the definition of the term "peddler," as given by the lexicographers. The spoken language of the present day is not fixed and unchangeable.   It expands and different terms take on new and additional meanings as time goes on. It is competent for the legislative assembly to give shape and effect to this tendency of the language.   It is within its power, within reasonable limits, to add to or enlarge the former signification of different terms.   In good reason if it were permissible to tax or regulate the occupation of actually carrying goods from place to place for sale to the consumer, it is equally proper to tax or regulate the business of selling by sample to like consumers under similar cir-

cumstances. In either case there is a probability that the trade will be carried on by transient and irresponsible persons who are likely to impose upon their customers, and it is equally within the scope of the law-making power to regulate such business and the persons engaged in it or to tax the occupation. The statute in question contains regulative features, for it provides that the peddler shall make a deposit with the county treasurer which shall be available on behalf of his creditors for claims arising in connection with his business transacted under the license. This is a wholesome regulation for the security of the general public against the deceits of irresponsible persons who might travel through the country, here to-day and yonder to-morrow, rendering it impracticable to make them amenable for any of their acts, unless some collateral guaranty were provided. It is plain, therefore, that the act must be upheld in its definition of what constitutes a peddler.

3. As to persons affected by the act, no distinction is made between the resident and the nonresident. No discrimination is made among different individuals engaged in the acts defined by the law as constituting peddling. In this sense the petitioner is not denied the protection of the law equal to that granted to any other person in like situation.

4. Neither can we attend to the criticism that the statute excepts from its operation those engaged in peddling or selling agricultural, farm or nursery products. The rule laid down by this court in *State* v. *Wright,* 53 Or. 344 (100 Pac. 296, 21 L. R. A. (N. S.) 349), is to the effect that, while the state may classify different callings and trades without being bound to include all persons or property that may be legitimately taxed for governmental purposes, yet the classification must be on some reasonable basis, and

the law must apply alike to all engaged in the business or occupation. A legitimate reason for excluding agricultural and farm products and nursery products from the operation of the law may be found in the fact that they are closely related to food products often sold for immediate consumption, and that in ordinary practice persons engaged in the sale of such chattels are not generally far from where they are known and have a local habitation, so that remedies against them are easily available. It is not so necessary to regulate or supervise individuals who only peddle as a rule in their own immediate neighborhood as it is those who come from other states, or from distant points in this state, are generally unknown in the communities where they engage in business, and are gone permanently in a few days. We are not authorized to disturb the classification made by the legislature, unless it is clearly arbitrary and beyond reason.

5. Neither can the law be condemned because sales to dealers in the articles sold are not included within the statute. In respect to purchasers the ordinary conception of a peddler includes only those who sell direct to consumers. Therefore, in framing its definition of a peddler for statutory purposes, the legislature was well within its authority when it declined to expand the original meaning further than to include those selling by sample who would otherwise be peddlers where they carried goods with them. The legislature evidently had in mind not to enlarge the primary signification of the term more than necessary to meet a condition which contained all the elements of peddling which require regulation or taxation.

The stipulation shows that the firm represented by the defendant shipped into the state, without previous orders or contracts for the same, a stock of vehicles by the car load knocked down; that after they arrived

in the state the original packages in which they came were broken up, the different parts put together, and the vehicles set up and made ready for immediate use. Under such conditions the uninterrupted course of precedent in the Supreme Court of the United States, since *Brown* v. *Maryland,* 12 Wheat. 419 (6 L. Ed. 678), to the present day, is that such changes in the original packages put the goods into the general mass of property in the state to which the shipment was made, after which the chattels are not affected by the interstate commerce clause of the national Constitution, but are subject to the laws of the state to which they have been thus sent: *May* v. *New Orleans,* 178 U. S. 496 (44 L. Ed. 1165, 20 Sup. Ct. Rep. 976); *McGregor* v. *Cone,* 104 Iowa, 465 (73 N. W. 1041, 65 Am. St. Rep. 522, 39 L. R. A. 484); *Smith* v. *State,* 54 Ark. 248 (15 S. W. 882); *State* v. *Montgomery,* 92 Me 433 (43 Atl. 13); *Croy* v. *Obion Co.,* 104 Tenn. 525 (58 S. W. 235, 78 Am. St. Rep. 931, 51 L. R. A. 254); *Kimmell* v. *State,* 104 Tenn. 184 (56 S. W. 854); *Kehrer* v. *Stewart,* 197 U. S. 60 (49 L. Ed. 663, 25 Sup. Ct. Rep. 403); *Armour Packing Co.* v. *Lacy,* 200 U. S. 226 (50 L. Ed. 451, 26 Sup. Ct. Rep. 232); *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500 (48 L. Ed. 538, 24 Sup. Ct. Rep. 365).

The stipulation further discloses that the defendant "went about Coos County from house to house and place to place with two horses and a wagon soliciting orders for vehicles, using for that purpose sample vehicles, which he carried with him and also a catalogue showing many other styles."

Having obtained an order for a specified vehicle, he sent it to his foreman in charge of the stock to which reference has already been made, and the rule of business as revealed by the stipulation was that the order was filled from this stock of vehicles already

within the state. The exception was that, if a suitable vehicle was not found in that stock, the order was filled by direct shipment from the factory of the firm in Iowa. The situation, then, is that as a rule the petitioner, being within the state and subject to its laws, and dealing with reference to vehicles already within the state, and not within the protection of the interstate commerce clause of the national Constitution, went about dealing as a peddler within the meaning of the statute. It is in all practical respects the same as if any other individual within the state went about peddling, as defined in the statute, the products of a factory situated here, operating and manufacturing like goods out of materials wholly produced in Oregon. The enactment by its terms applies with like sanction to both instances, for in each of them the goods involved would be part of the general mass of the property within the state, and, alike in each illustration, the acts admitted to have been done come within the statutory definition of the term "peddler." These considerations serve to distinguish this case from *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128), in this, that in that case the demurrer confessed the averments of the complaint that the plaintiffs were engaged in taking orders in this state in advance for the purchase of vehicles to be thereafter shipped from the State of Iowa and delivered to the individual purchasers in fulfillment of their respective orders. This court held very properly that, as the transaction constituted interstate commerce over which the state had no control, it could not tax or regulate the same. No mention was made in the complaint in *Spaulding* v. *McNary* about any stock of goods having been shipped into the state and held for sale in advance of any contract or order for the same—a feature so prominent in the case at bar. The true effect of *Spaulding* v.

*McNary,* when properly understood, is not to declare the law in question unconstitutional *in toto,* but, in view of the exclusive authority of Congress over interstate commerce, that case in substance limits the operation of the statute to persons and property within this state and subject to its jurisdiction.

Many cases were pressed upon our attention at the argument on rehearing by which it was sought to establish that the act described in the stipulation does not constitute peddling. A few of those cases are the following: *Kennedy* v. *People,* 9 Colo. App. 490 (49 Pac. 373); *State* v. *Dressner* (Del. Gen. Sess.), 85 Atl. 881; *City of Davenport* v. *Rice,* 75 Iowa, 74 (39 N. W. 191, 9 Am. St. Rep. 454); *Kimmel* v. *City of Americus,* 105 Ga. 694 (31 S. E. 623); *Hewson* v. *Englewood,* 55 N. J. Law, 522 (27 Atl. 904, 21 L. R. A. 736). These all depend upon the definition of the term "peddler" as found in the ordinary dictionary, and in the main they lay down the rule that a municipal corporation, empowered by its charter to regulate. tax and control peddlers, without anything further being stated as to the signification of the term, cannot enlarge the same beyond the ordinarily accepted definition. The argument based upon these cases leaves out of view the authority of the legislature to expand the definition of the word for statutory purposes.

6. It is further contended that peddling cannot be predicated to a single sale. Cases are cited where the traveling salesman occasionally sold his sample, and it was held not to be peddling because it was contrary to the usual course of his business, and that his liability must be determined by the general nature of his transactions. Such cases are *In re Houston* (C. C.), 47 Fed. 539 (14 L. R. A. 719); *Commonwealth* v. *Farnum,* 114 Mass. 267; *Kansas City* v. *Collins,* 34 Kan. 434 (8 Pac. 865). The agreed facts in this case,

however, as before stated, show that the customary procedure of the defendant was to solicit orders which as a rule were filled from stock within the state already shipped here in advance of orders, and consequently within the jurisdiction and authority of the state. In short, the act described in the stipulation was according to the rule and not the exception.

7. It was contended at the argument that, inasmuch as the statute was confessedly inapplicable to persons engaged in purely interstate commerce, it was wholly void. This argument is predicated upon the idea that the legislative assembly would not have enacted the statute in question if it could have foreseen that it would be applicable only to persons and property within the state. Many authorities are cited which are supposed to sustain this doctrine; but in the great majority of them at least the law in question contains numerous provisions so dependent upon one another that the valid ones cannot be separated from those determined unconstitutional, without destroying the system of taxation or regulation sought to be established. In the statute under consideration, however, there are no interdependent provisions. The law is single and direct in its purpose. With its effect, except as controlled by constitutional limitations, we have nothing to do. We cannot presume that a co-ordinate branch of the government was ignorant of the provisions of the national Constitution and the paramount authority of the general government over interstate commerce. Except as controlled by provisions of the state and national fundamental laws, the legislative assembly is supreme in the exercise of its functions, and we cannot assume toward it an attitude of tutelage. If the law is detrimental to the best interests of the people of the state considered as an economic question, the re-

sponsibility for its repeal must be taken by the authority that enacted the statute. We cannot assume that prerogative, for it is legislative in its nature.

In brief, whether we consider the statute as one of regulation or taxation, it was within the authority of the legislature. Upon the facts stated, both the property involved in the transaction and the actors were within the state subject to its jurisdiction, and were not affected by the interstate commerce clause of the national Constitution. The law is not discriminative in that it treats alike all coming within the situation described by its terms. The petitioner was clearly a peddler as described by the enlarged statutory definition of the term. He was confessedly acting without having procured a license or otherwise complying with the terms of the law.

We adhere to the former decision.

AFFIRMED.    FORMER OPINION SUSTAINED.