Argued January 10, modified January 25, rehearing denied February 15, 1916.

# STERETT & OBERLE PACKING CO. *v.* PORTLAND.*

(154 Pac. 410, 415.)

**Food—Inspection Within Police Power of State.**

1. It is within the police power of the state to enact laws for the inspection of food products.

**Food — Municipality may Exercise State Police Power Requiring Inspection.**

2. The city charter of Portland confers power to require inspection of food offered for sale for human consumption within the corporate limits, under which authority the city may exercise state police power requiring inspection of foodstuffs.

**Constitutional Law—Inspection of Foodstuffs not Invalid as Class Legislation.**

3. Under an ordinance passed by the City of Portland requiring, as a condition to the sale of meats for human food without the municipality by a person who slaughters more than five animals a week, should be subject to inspection, and further providing that persons slaughtering less than that number each week could only dispose of their meats by having them inspected at a central station, is not invalid as an unreasonable classification.

[Constitutionality of regulations and restrictions to promote and secure public health, see note in 25 Am. St. Rep. 889.]

**Food—Enforcement of Extraterritorial Powers by a City.**

4. A city has no power to enforce an ordinance requiring the inspection of slaughter-houses and meats when the same are located beyond the city limits, but it may require and enforce submission to inspection as a condition precedent to the sale of meats within the city.

**Constitutional Law—Justification of Police Power Regulation.**

5. Among the powers reserved to the people by the federal Constitution is that which has come to be known as the police power of the states, and is a weapon of self-defense possessed by all governments, by which the greatest good will be secured to the greatest number.

**Constitutional Law—Validity of Statute to Protect Public Health.**

6. Where the object of a statute is to prevent the spread of diseases or is intended to protect public health, which operates on all alike, it is not invalid under either the state or federal Constitution.

*On the constitutionality of discriminations in statutory regulations concerning food products, see note in 34 L. R. A. (N. S.) 650.

REPORTER.

**Constitutional Law—Construction of Statute or Ordinance.**

7.  The constitutionality of a statute or ordinance is usually tested, not by what is actually done under it, but by what it authorizes and permits to be done, and to justify classifications, where several classes are affected differently, there must be some difference between the classes which bear a just and proper relation to the purposes of the law.

**Constitutional Law—Construction—Special Privileges.**

8.  An act which denies the equal protection of the laws, or grants special privileges or immunities, which upon the same terms do not equally belong to all alike, is prohibited by the Constitutions of the United States and that of the state.

**Constitutional Law—Ordinance Invalid in Theory of Class Legislation.**

9.  An ordinance of the City of Portland providing for the inspection of meats and of slaughter-houses located outside of the city limits, as a condition precedent to the sale of such meats within the city, but exempting from the operation of such ordinance slaughter-houses and packing plants subject to federal inspection statutes, is unconstitutional, void and discriminatory, in so far as the ordinance prescribes a higher inspection regulation than those required by the federal government, for in such case it confers special immunities on certain packers subject to federal laws.

From Multnomah: WILLIAM N. GATENS, Judge.

In Banc.   Statement by MR. JUSTICE BEAN.

This is a suit by the Sterett & Oberle Packing Company, a corporation, H. E. Adams and H. P. Adams, partners doing business as Adams Brothers, M. J. Gill, B. E. Gill and B. A. Jones, partners as M. J. Gill & Co., Frank L. Smith Meat Co., a corporation, Jones' Market, a corporation, Boston Packing Company, a corporation, Paul R. Spath, and Charles Rudeen, against the City of Portland, a municipal corporation, H. R. Albee, mayor of the City of Portland, C. A. Bigelow, W. L. Brewster, Will H. Daly and Robert G. Dieck, commissioners of the City of Portland, John Clark, chief of police of the City of Portland, and M. B. Marcellus, chief of the Bureau of Health of the City of Portland.

The facts are as follows: On June 10, 1914, the city council of Portland passed Ordinance No. 29,063, de-

signed to regulate the slaughtering of animals and the sale of carcasses and parts thereof which are intended for consumption in the city, and providing a penalty for the violation thereof. It prescribes regulations for the sanitation and inspection of slaughter-houses located within one mile of the city and outside its limits. As regulations they are not binding, because the council has no power to legislate for territory beyond the city boundaries. The provisions respecting such slaughter-houses amount only to conditions imposed upon the right to sell in the city the meat of animals slaughtered within the one-mile zone. The sale of such meat in the city is prohibited unless those regulatory provisions are complied with. The plaintiffs are engaged in the business of selling meat in Portland. Some of them own and operate slaughter-houses which are located outside of and within one mile of the city, and their supply of meat originates from animals killed at such establishments by persons who slaughter more than five animals a week.

The plaintiffs instituted this suit for the purpose of enjoining the enforcement of the ordinance on the ground that it is void, because it contravenes the Constitution of the United States and of the State of Oregon in the following particulars: (1) It abridges the privileges and immunities of citizens of the United States; (2) it grants to a class of citizens privileges and immunities which upon the same terms do not equally belong to all citizens; and (3) it discriminates unlawfully against the class of meat sellers to which the plaintiffs belong, and no reasonable grounds exist for such classification and discrimination. The complaint alleges in substance as follows: That meat which originates from animals slaughtered at places more than one mile from Portland and which originates from

animals slaughtered within a mile of the city, but slaughtered by persons who do not kill more than five animals a week, is sold as a regular business in the City of Portland. That only one concern in the State of Oregon has federal inspection of its meat and slaughter-houses which are located outside of and more than one mile from the city, and that it sells its meat and meat products within the municipality. That persons whose slaughter-houses and meats are inspected by the United States Department of Agriculture are entirely excepted and exempted from every provision of the ordinance.

Plaintiffs claim that the allegations of the complaint show that this ordinance operates to deprive them of their lawful privilege of selling meat in Portland on the same terms that are accorded to their competitors, consisting of two other classes of meat sellers created by the ordinance. It also appears from the complaint: That by the ordinance all persons who have slaughter-houses within a mile of the city, except those who do not kill more than five animals a week, must comply with the many expensive regulations set out in the ordinance as to sanitation, construction and maintenance of their slaughter-houses, and as to the antemortem and postmortem inspection of the animals and carcasses slaughtered, and must obey the orders and dictations of the municipal inspectors; otherwise, their meats are prohibited from being sold in the city. That all persons who slaughter animals at places more than a mile from Portland, and those who within one mile thereof kill not to exceed five animals a week, are not required to comply with the expensive regulation of the ordinance as to sanitation, construction and maintenance of their slaughter-houses, nor submit their animals to an antemortem inspection, but may bring

them to the city and have them pass a postmortem inspection there, which right is denied to carcasses slaughtered within one mile of the city where more than five animals a week are killed.

A demurrer was filed to the complaint, on the ground that the facts stated entitled plaintiffs to no relief. This was sustained. Plaintiffs refused to plead further, and a decree was rendered dismissing the complaint, from which plaintiffs appeal.

Modified. Rehearing Denied.

For appellants there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble, Mr. John F. Logan* and *Mr. John J. Fitzgerald,* with an oral argument by *Mr. Ephraim B. Seabrook.*

For respondents there was a brief with oral arguments by *Mr. Walter P. La Roche,* City Attorney, and *Mr. Henry A. Davis.*

Mr. Justice Bean delivered the opinion of the court.

The question for determination upon this appeal is whether the facts so alleged in the complaint and admitted by the demurrer show that the ordinance has the improper and illegal effect claimed by the plaintiffs; that is, does the ordinance abridge any lawful privilege of the plaintiffs, or grant any special franchise to other classes of meat sellers which is not allowed the plaintiffs on the same terms or unreasonably discriminate against them. Counsel for the plaintiffs contend that the ordinance in question is unenforceable and void. It is claimed by the city that the purpose and aim of the ordinance is to preserve and protect the public health, which renders it necessary and convenient to classify meat sellers into three different classes, as follows:

The first consists of all persons engaged in the city in selling meats which have been inspected by the United States Department of Agriculture or which have been slaughtered in an establishment inspected by it. This class, which is styled by the plaintiffs as the "more favored" one, is wholly excepted from the provisions of the ordinance by Section 2 thereof.

The second class consists of those engaged in Portland in selling meat which has been slaughtered outside of and more than one mile from the city, or, if slaughtered outside of and within a mile of the municipality, meat slaughtered by persons who kill no more than five animals a week. This class may sell such meat within the city, provided they present the carcasses for inspection at some place therein in accordance with Section 12 of the ordinance, without complying with the provisions thereof as to permits for slaughter-houses, sanitation, inspection, etc. These the plaintiffs term the "less favored" class.

The third class consists of all persons engaged in the city in selling meat which has been slaughtered outside of and within one mile of the city by persons who kill more than five animals a week. They are prohibited from selling such meat within the city unless they comply with the several sections of the ordinance. They are not permitted, as the second class is, to have their meats inspected within the city, but are expressly excluded from so doing by the provisions of Section 12. The plaintiffs term this last class, to which they belong, the "unfavored and burdened."

Plaintiffs maintain that the classifications made by the ordinance stifle competition and are positively detrimental and opposed to the avowed purpose of protecting the public health. It is asserted on behalf of the city that at the present time, and for many years

past, the City of Portland has had in operation several ordinances designed to protect the public health from the ravages of disease spreading through food products. There are sanitary ordinances, market ordinances and an ordinance prohibiting the slaughtering of animals within the city limits. The proprietors of butcher-shops, delicatessen stores, restaurants and other eating places are required to observe certain regulations with respect to the conduct of their business, and are prohibited from selling or offering for sale any food products which are unfit or unwholesome for human food. With the growth and expansion of the city, it has become a difficult problem for the officials in charge to see to it that these several regulations are strictly observed and the prohibitions enjoined are not violated to the injury of the public. These circumstances gave rise to additional legislation upon the subject of health protection, and it was found that stricter compliance with the sanitary and health regulations of the city could be effected by the enactment of an ordinance requiring a thorough inspection of food products before the same were admitted to the city to be offered for human consumption. Experience showed that contagious and infectious diseases are communicated in a great majority of cases through milk and meat products. Accordingly, some time ago, the City of Portland enacted an ordinance requiring a thorough inspection of dairy herds and of milk produced therefrom before such milk could be even brought into the city for the purpose of offering the same for sale therein.

The meat inspection ordinance is designed to provide for a thorough inspection of all meat and meat products before the same are admitted to the market places of the city to be offered for sale for human con-

sumption, in order to protect the public health. The elimination of slaughter-houses from the city limits naturally caused their location a short distance from the municipal boundaries. It is conceded that the slaughter-houses from which the city's supply of meat is chiefly derived are located within the prescribed one-mile zone, with the exception of one under federal regulation.

1. The enactment of laws for the inspection of foodstuffs is within the police power of the state. This is not questioned: *Chicago Board of Trade* v. *Cowen,* 252 Ill. 554 (96 N. E. 1084) ; *Foote* v. *Stanley,* 117 Md. 335 (82 Atl. 380) ; *Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 345 (43 L. Ed. 191, 18 Sup. Ct. Rep. 862).

2. The Portland charter confers the power to require the inspection of articles of food offered for sale for human consumption within the municipality where it applies to those who bring or send their products into the city for sale for such purposes: *Norfolk* v. *Flynn,* 101 Va. 473 (44 S. E. 717, 99 Am. St. Rep. 918, 62 L. R. A. 771) ; *State* v. *Nelson,* 66 Minn. 166 (68 N. W. 1066, 61 Am. St. Rep. 399, 34 L. R. A. 318) ; *Adams* v. *Milwaukee,* 144 Wis. 371 (129 N. W. 518, 43 L. R. A. (N. S.) 1072).

3. We will first consider the ordinance as to the second class, or all persons engaged in the city in selling meats which have been slaughtered outside of and more than a mile from the municipality, or, if slaughtered outside of and within a mile of the city, meat slaughtered by a person who slaughters no more than five animals a week. As a matter of fact, it is asserted that there are very few, if any, establishments beyond the one-mile zone at which more than five animals are slaughtered each week for sale in the city.

With regard to those who slaughter less than five ani-mals a week, it would be manifestly impracticable to require them to observe the regulations with respect to slaughter-houses. It is not to be presumed that such persons maintain slaughter-houses. They are mostly small farmers who occasionally sell the meat of an animal on the public markets of Portland. There are reasonable grounds for making a separate classifica-tion for such small producers: See *Ex parte Case,* 70 Or. 291, 301 (Ann. Cas. 1916B, 490, 135 Pac. 881, 141 Pac. 746). Different regulations for such a class are made in the federal rules for the inspection of meats for interstate and foreign commerce.

It would not seem practical for the city inspectors to travel all over the state or at great distances be-yond the confines of the city, in order to perform their duties and inspect establishments located outside of the one-mile limit. None of the members of the second class, however, are immune from regulation. Section 12 of the ordinance provides that the members of this class who desire to sell meats for human food in the city shall bring their products to a central depot for inspection, and that the same shall be passed or con-demned according to the provisions of the ordinance. This arrangement was made by the legislative depart-ment of the city with a full knowledge of local con-ditions. Such classification may depend upon the de-gree of evil without being arbitrary or unreasonable: *International Harvester Co.* v. *Missouri,* 234 U. S. 199 (58 L. Ed. 1276, 34 Sup. Ct. Rep. 859, 52 L. R. A. (N. S.) 525); *Ozan Lbr. Co.* v. *Union Co. Nat. Bank,* 207 U. S. 251 (52 L. Ed. 195, 28 Sup. Ct. Rep. 89); *Heath & M. Mfg. Co.* v. *Worst,* 207 U. S. 338 (52 L. Ed. 236, 28 Sup. Ct. Rep. 114); *Chicago Dock & C. Co.* v. *Fraley,* 228 U. S. 680 (57 L. Ed. 1022, 33 Sup. Ct. Rep. 715). We

cannot say that the municipal law is either arbitrary or unfair because farmers who slaughter a few animals and sell the meat for human food within the city, and some others from a distance who possibly may do so, all under inspection, are not subject to all the regulations as to sanitation of slaughter-houses, etc. As said by Mr. Justice PECKHAM in *Ozan Lbr. Co.* v. *Union Co. Nat. Bank,* 207 U. S. 251, at page 256 (52 L. Ed. 195, 28 Sup. Ct. Rep. 89, on page 91):

"It is almost impossible, in some matters, to foresee and provide for every imaginable and exceptional case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, although appropriate and proper upon the general subject upon which such legislation is to act, so long as there is no substantial and fair ground to say that the statute makes an unreasonable and unfounded general classification, and thereby denies to any person the equal protection of the laws. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things."

4, 5. The first and third classes embrace by far the major portion of the packing-houses from which the Portland market derives its supply of meats. It is, of course, apparent that as compulsory regulations, the ordinance is extraterritorial and unenforceable. The city has no power to enforce a compliance with them because places and operations regulated are situated beyond the city's borders. But in so far as the ordinance prohibits the sale within the city of the products of those places, unless the regulations have been complied with, it is enforceable, and a compliance with the regulations is exacted as a condition precedent to the selling of such products in the city. The Constitution of the United States was framed on the theory that all power resides in the people, and in promulgating that

instrument the people of the several states reserved to themselves all powers except those expressly delegated to the federal government by the Constitution. Among the powers so reserved to the people was that which has come to be known as the police power of the several states, and it has been appropriately said that the police power is inherent in all government.. It is, so to speak, a weapon for self-defense which must necessarily be possessed by all governments. It is that power by which the greatest good may be secured to the greatest number. From this principle has arisen the maxim: "*Salus populi suprema est lex.*" In conformity with this maxim a fair and liberal construction should be applied to all laws which are intended to protect the health of the people in general. That rule has been uniformly applied, even where the enforcement of the law will result in sundry burdens and inconveniences to individuals. A greater reason for such an application of the rule exists in these modern times on account of increasing population, and the many new agencies and methods for the distribution of food, medicines, and other articles for human consumption. The wisdom of salutary laws relating to contagious diseases and proper restraints in relation thereto cannot be questioned. In order to promote the public health, individual convenience and profit must be enjoyed in proper subjection to and observance of the laws for the protection of the same: *State* v. *Starkey,* 112 Me. 8 (90 Atl. 431); *Stettler* v. *O'Hara,* 69 Or. 519 (139 Pac. 743, Ann. Cas. 1916A, 217). Under fair and reasonable classifications and regulations, plaintiffs would have no valid cause to complain on account of some inconvenience and necessary expenditures required by the ordinance for the public weal.

6. We come next to the first class, which is wholly exempt from the provisions of the ordinance as to slaughter-houses, which are inspected by the United States Department of Agriculture, wherever situated. A statute designed to prevent the spread of contagious diseases or to protect the health of the public, which operates upon all substantially alike, is not inimical to the federal or state Constitution: *Adams* v. *Lytle* (C. C.), 154 Fed. 876; *Adams* v. *Milwaukee,* 144 Wis. 371 (129 N. W. 518, 43 L. R. A. (N. S.) 1072, and notes); *Pierce* v. *Dillingham,* 203 Ill. 148 (67 N. E. 846, 62 L. R. A. 888).

7. The requirements of the ordinance applicable to the third class, to which plaintiffs belong, were adopted from and are substantially identical with the regulations governing the meat inspection of the United States Department of Agriculture made effective May 1, 1908. Soon after the passage of the ordinance these rules were changed in important particulars; therefore the exemption of persons coming within the first class from the provisions of the ordinance has a material effect upon the plaintiffs, or the third class, who are doing business in the sale of meats in the City of Portland in competition with the first class. The constitutionality of a statute or ordinance is usually to be tested, not by what is actually done under it, but by what it authorizes and permits to be done: McQuillin, Mun. Corp., § 811; *Elkhart* v. *Murray,* 165 Ind. 304 (75 N. E. 593, 112 Am. St. Rep. 288, 6 Ann. Cas. 748, 1 L. R. A. (N. S.) 940); *Henderson* v. *Durham Co.,* 132 N. C. 779 (44 S. E. 598); *Guthrie Co.* v. *Cameron,* 3 Okl. 677 (41 Pac. 640). To justify classifications for the purpose of legislation whereby several classes are affected differently by the law, there must be some reasonable ground for the classifications. There must be

some difference between the classes which bears a just and proper relation to the purposes of the law and to the classifications: *Gulf etc. Co.* v. *Ellis,* 165 U. S. 150 (41 L. Ed. 666, 17 Sup. Ct. Rep. 255); *State* v. *Wright,* 53 Or. 344 (100 Pac. 296, 21 L. R. A. (N. S.) 349); *Kellaher* v. *Portland,* 57 Or. 575–584 (112 Pac. 1076); *State* v. *Loomis,* 115 Mo. 307 (22 S. W. 350, 21 L. R. A. 789); *Dobbins* v. *Los Angeles,* 195 U. S. 223 (49 L. Ed. 169, 25 Sup. Ct. Rep. 18). Where a classification is based upon no reasonable ground and bears no just or proper relation to the object of the law, but is in fact an arbitrary selection and results in unjust discriminations, it cannot be justified, and the act attempting to make such classification must be declared void: *State* v. *Wright,* 53 Or. 344 (100 Pac. 296, 21 L. R. A. (N. S.) 349); *Kellaher* v. *Portland,* 57 Or. 575 (112 Pac. 1076); *Chaddock* v. *Day,* 75 Mich. 527 (42 N. W. 977, 13 Am. St. Rep. 468, 4 L. R. A. 809); *Gulf Co.* v. *Ellis,* 165 U. S. 150 (41 L. Ed. 666, 17 Sup. Ct. Rep. 255); *Cotting* v. *Goddard,* 183 U. S. 79 (46 L. Ed. 92, 22 Sup. Ct. Rep. 30).

8. An act which denies to the plaintiffs the equal protection of the laws, or grants to others special privileges or immunities which upon the same terms do not equally belong to the plaintiffs, is prohibited by the Constitutions of the United States and of the State of Oregon: Article XIV, Section 1, Const. U. S.; Article I, Section 20, of the Constitution of Oregon.

9. The vital question in this case is: Are the provisions of the ordinance discriminatory? By section 3 of the ordinance it is made unlawful to sell, have or keep or expose for sale for human food any meats which should be condemned under section 13. By section 2 the first class is entirely exempted from the provisions of section 3. This distinction cannot be said

to be based upon any necessity or convenience for the protection of the public health.   After about six years' experience the United States Department of Agriculture changed the regulations governing the meat inspection, which became effective November 1, 1914, and are found in a pamphlet issued July 30, 1914. Under these regulations, which govern the first class named in the ordinance, a large amount of meat and meat products may be passed as fit for human food which are required to be destroyed by the terms of the ordinance.   Some of the differences between the federal regulations and those of the ordinance as applied to the second and third classes are as follows: (1) Section 13, subdivision 10, paragraph 1, of the ordinance requires the condemnation of carcasses of swine suffering from hog cholera and the destruction thereof under sections 14 and 15 of the ordinance.   By subdivision B, paragraph 2, section 4, Regulation 11, of the Federal Regulations (see page 28 thereof), a carcass in which the lesions of hog cholera are slight and limited in extent may be passed for sterilization, and after sterilization may be canned and sold for human food. See Regulation 15, page 36, of the Federal Regulations. (2) Section 13, subdivision 26, of the ordinance requires the condemnation of the carcasses of certain pregnant animals.   By section 20 of Regulation 11 of the Federal Regulations (page 33), such carcasses may be sterilized and sold for human food.   (3) Section 13, subdivision 27, of the ordinance requires the condemnation of the carcasses of all calves, pigs, kids and lambs under three weeks of age regardless of their condition.   By paragraph 1 of section 21 of Regulation 11 of the Federal Regulations (page 33), such carcasses may be used for human food, provided the meat

complies with certain stated requirements. Other regulations differ so that those governing the first class are not so drastic as the requirements of the ordinance; therefore meat and meat products, which under the federal regulations are suitable for food for human consumption and may be sold for that purpose in the City of Portland, without municipal inspection, by persons of the first class, if presented by members of the second and third classes, must be condemned and destroyed under the terms of the ordinance.

If one class of persons is granted the privilege of vending certain kinds of meat and meat products in the city, why should not members of the other two classes be accorded the right to sell the same kind of foodstuffs? The classification in this respect does not appear to be based upon a fair or reasonable foundation and this discrimination cannot be upheld. It is not for the court to suggest which kind of regulations is preferable. Had the exemption of the members of the first class from the requirements of the ordinance as to inspection been provided for as long as the products of their establishments were subject to federal inspection under regulations like those contained in the city ordinance, then when the amendments of the federal regulations were made the excepted class would automatically have come within the provisions of the municipal law, and the objectionable features of the ordinance would have been obviated. Doubtless the city by appropriate amendment of its ordinance can adjust the matter, so that important business enterprises will not be unnecessarily inconvenienced or jeopardized, and the different persons interested can with reasonable safety make preparation to conform to the beneficial requirements of the law.

The decree of the lower court will be modified to conform herewith.  MODIFIED.

MR. JUSTICE EAKIN and MR. JUSTICE BENSON absent.

---

Reversed and rehearing denied February 15, 1916.

ON PETITION FOR REHEARING.

(154 Pac. 415.)

In Banc.  MR. JUSTICE BEAN delivered the opinion of the court.

The petition for rehearing in this cause suggests that the formal concluding part of the memorandum opinion is misunderstood. In referring to the ordinance in question it is stated in the opinion as follows: "The classification in this respect does not appear to be based upon a fair or reasonable foundation and this discrimination cannot be upheld." This conclusion leads to but one result; namely, the decree of the lower court is reversed, the demurrer to the complaint will be overruled, and the ordinance declared invalid.

It is further stated in the opinion that "It is not for the court to suggest what kind of regulations is preferable." This shows that the court did not pass upon any ordinance that may be enacted, although the matter of an amendment to the ordinance entered into the oral argument. With this correction the petition for rehearing is denied.  REVERSED.  REHEARING DENIED.