Argued October 15; affirmed December 7, 1937

# BELL *v.* STATE INDUSTRIAL ACCIDENT
# COMMISSION

(74 P. (2d) 55)

654

*Victor R. Griggs*, Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*W. C. Winslow*, of Salem, for intervenor.

*Mark V. Weatherford*, of Albany, amicus curiae.

LUSK, J. This case began as an appeal by the plaintiff to the circuit court for Washington county from certain orders of the appellant, State Industrial Accident Commission, denying him compensation for an accidental injury which he sustained while working for the intervenor and respondent, Z. J. Riggs. Riggs was brought into the case by a demand for intervention filed by the commission pursuant to the purported authority of chapter 144, Laws 1935, section 49-1822-a, Oregon Code Supplement 1935, which reads as follows:

"If a workman of an employer engaged in a hazardous occupation shall receive an accidental injury prior to the time the employer has filed with the commission a notice of engaging in a hazardous occupation, as required by section 49-1822, and such workman or other beneficiaries shall file a claim for compensation with the commission on account of said injury, the cost of such claim to the industrial accident fund shall be a claim against the employer. The commission shall recover such claim from the employer for the benefit of the industrial accident fund.

"If a workman shall appeal from an order of the commission in any claim in which the alleged accident

occurred before the employer filed with the commission the notice required by section 49-1822, the commission forthwith shall serve upon the employer a copy of the complaint and a demand that the employer intervene in said appeal as a party defendant. Such service shall be made in the manner provided by law for the service of summons. The employer may intervene in said appeal as a party defendant within twenty (20) days after the service of said complaint or within such further time as may be allowed by order of the court. If such employer shall not intervene in the appeal, the court shall have jurisdiction of such employer to the same extent as if he had intervened.''

With its demand for intervention, the commission served upon Riggs a copy of the complaint and also filed and served upon him a cross complaint, which, after narrating the circumstances of Bell's employment, the character of work in which he was engaged and the facts of his injury, alleged that the intervenor had not given the notice of engaging in a hazardous occupation required by section 49-1822, set forth the amounts which the commission would be required to expend by reason of such injury, in the event that the plaintiff should prevail on his appeal, and prayed that a judgment for those amounts, described in the pleading as ''costs of the claim of plaintiff'', be recovered by it against the intervenor.

The intervenor filed his answers to the plaintiff's complaint and the commissioner's cross complaint, putting the case at issue, and a jury trial was had, at the conclusion of which the court directed the jury to return a verdict for plaintiff against the commission, but reserved for further consideration the determination of a motion for a directed verdict submitted by the intervenor. Subsequently, the court entered a judgment of dismissal of the action as to Riggs.

This appeal is taken from that judgment. No appeal has been taken from the judgment in favor of the plaintiff, and the only question before us is whether the intervenor is liable under the statute, the provisions of which we have quoted.

■ ■ It appears from the record that the plaintiff's claim was rejected by the commission, because, in the judgment of that body, he was not an employee of Riggs, but an independent contractor and, therefore, not subject to the provisions of the workmen's compensation law. His injury, the loss of the sight of an eye, and the fact that it was accidentally sustained are conceded. The court directed the jury to return a special verdict in which they found that the plaintiff, at the time he was injured, was working as an employee of Riggs and was engaged in a hazardous occupation as defined by the statute. The judgment of the circuit court was in favor of Riggs, who has not appealed and is, of course, in no position to question the correctness of the trial court's rulings. The commission, as we have stated, has appealed only from the judgment dismissing the cause as to Riggs and cannot question the conclusiveness of the adjudication awarding the plaintiff compensation. The uncontradicted evidence establishes that Riggs failed to file with the commission notice of his engaging in a hazardous occupation, and, hence, all the conditions are present which, under the statute, if it be valid and enforceable, would make the employer liable for "the cost of such claim to the industrial accident fund".

■ The meaning of the statute is by no means clear, but since it provides for recovery of the "claim" from the employer, for the benefit of the industrial accident fund, and authorizes the commission to implead the employer, in a case where the employee has appealed to

the circuit court from an adverse ruling of the commission, we think we are justified in assuming that it was intended that judgment should be entered against the employer in that proceeding. It, therefore, becomes pertinent to inquire what sort of a judgment must be entered and what are the legal essentials of a valid judgment?

Section 2-901, Oregon Code 1930, defines a judgment as "the final determination of the rights of the parties in the action".

■ "A judgment is a conclusion of law from the facts proved or admitted in the suit, and in money demands must be absolute and in a specific amount.": *Swain v. Smith*, 65 N. C. 211. In 1 Black on Judgments, (2d Ed.) § 118, the author says:

"The amount of a judgment must be stated in it with certainty and precision. All judgments must be specific and certain; they must determine the rights recovered or the penalties imposed, and be such as the defendant may readily understand and be capable of performing. A judgment, it is said, must be so certain that the clerk can issue an execution by inspection of it, without reference to other entries. Hence a judgment which is uncertain as to the amount which it awards is invalid. For example, a judgment against a garnishee 'for the amount of his answer or so much thereof as will satisfy the plaintiff's debt and cost' has been held void for uncertainty. And a finding that a garnishee was liable for one of two amounts, which are to be determined by a further contingency was not considered a judgment at all."

The text is supported by the following authorities: *Berry v. Anderson*, 2 How. (Miss.) 649; *Battell v. Lowery*, 46 Iowa 49; and *Early v. Moore*, 4 Munf. (Va.) 262.

In *Dray v. Crich*, 3 Or. 298, 300, this court said:

"It is of the gravest importance that when a final judgment is rendered, the record shall be definite and certain, and show unequivocally what matters have been adjudicated, and that the decision shall be a finality in regard to the matters in issue."

This precept is cited with approval in *Schmid v. City of Portland*, 83 Or. 583, 591 (163 P. 1159). See also *Dickerson v. Walker*, 1 Ala. 48; *Alexander v. Leland*, 1 Idaho 425, and *Boyken v. State*, 3 Yerg. (Tenn.) 426. In 33 C. J. 1196, § 129, it is stated: "It is a general rule that a judgment must not be conditioned upon any contingency, and it has been held that an alternative or conditional judgment is wholly void." In support of this statement, are cited the cases of *Puette v. Mull*, 175 N. C. 535 (95 S. E. 881); *Stricklin v. Cox*, 102 N. C. 411 (9 S. E. 414); and *Dunn v. Barnes*, 73 N. C. 273.

■ The plaintiff in this case suffered the loss of the sight of an eye. For that injury he is entitled to receive, under section 49-1827.6, Oregon Code Supplement 1935, the sum of $1,000, payable at the rate of $50 per month if he is married or has a child under the age of 18 years; otherwise at the rate of $35 per month. Should he die before receiving all the payments, then under section 49-1827.7 the remaining payments will be made to the person or persons who would have been entitled to receive death benefits, if the injury causing his death had been fatal. Thus, for example, if the plaintiff here is a married man, and should he die before all the payments are made, his widow would be entitled to receive the balance of his compensation.

It is thus obvious that at the time the judgment was rendered in the circuit court no one knew how much the commission would be required to pay plaintiff, and no one knows it now. Should the plaintiff live until

he receives all the payments, it will be one amount; should he die tomorrow, leaving no survivors, it will be a different amount; should he die tomorrow, leaving a widow, it might be a still different amount.

Section 49-1827.1, Oregon Code Supplement 1935, prescribes the benefits to be paid in case of fatal injuries. Under the terms of that section, paragraphs 7 and 8, if a surviving spouse, receiving monthly payments, shall die, leaving a child under the age of 18 years and entitled to compensation on account of the death of the workman, a monthly payment of $15 shall be made to each such child until he becomes 18 years of age, and if a child is an invalid at the time of reaching the age of 18 years the payments to him shall continue while he remains an invalid. If we suppose the case of such a widow dying and leaving a family of 10 children, all under the age of 18 years, some of whom may be invalids when they reach that age, we are confronted with utter uncertainty respecting the amount of money which may eventually have to be paid out of the industrial accident fund to compensate these beneficiaries, pursuant to the provisions of the act.

Under the decision of this court in *State ex rel. Griffin v. State Industrial Accident Commission*, 145 Or. 443 (28 P. (2d) 237), the commission is empowered to readjust or terminate compensation to the injured workman when his condition has changed subsequent to the commission's award or the judgment of the court. While the award for the loss of the sight of an eye can never, of course, be diminished, there are other injuries which are changing in their nature and symptoms, as, for example, the injury involved in the case we have just cited; and into such cases there enters an additional element of uncertainty as to the amount of compensa-

tion which finally will be paid, arising out of the power of the commission to modify the award.

Without multiplying illustrations, we think that we have said enough to demonstrate the impossibility of entering a money judgment against the employer under this statute, in a proceeding of this character, which will not be indefinite, uncertain and contingent. The debtor could not perform it, the clerk could not issue execution on it, it could not be enforced. In a word, the legislature has enacted a statute which provides for the recovery of an invalid judgment. The statute, so interpreted, is infected with the vice of uncertainty and indefiniteness, and must be pronounced inoperative and void: 1 Lewis' Statutory Construction (2d Ed.) § 86.

■ That, however, is not the interpretation which counsel for the commission would have us adopt. They say that the "cost of the claim to the industrial accident fund" refers to the amount which the commission is required to set aside as a reserve for the payment of the claim, under section 49-1827.9, Oregon Code Supplement 1935. That section provides, in substance, that for every case of injury, resulting in death or permanent disability, it shall be the duty of the commission forthwith to notify the state treasurer in writing of the amount required to equal 4 per cent interest per annum, the present worth of the monthly installments, payable on account of such injury; and requires the state treasurer (who is the custodian of the industrial accident fund) to transfer from the industrial accident fund to a fund to be known as the segregated accident fund the amount so specified by the commission. Provision is then made for investment of the segregated fund and for charging it with the payment of installments on claims. It is further provided that any defi-

ciency in the segregated fund shall be made good out of, and any balance or overplus shall revert to, the industrial accident fund. It is argued that the commission is entitled to judgment for the amount so transferred; that upon such transfer the claim has cost the industrial accident commission the amount of money transferred, for which the commission has an action against the noncomplying employer; that if a noncomplying employer cannot recover back the unexpended balance of the award, this in itself is not sufficient to make the law invalid, and, finally, that the employer could obtain a refund without resorting to litigation, there being nothing in the act which prohibits it.

We are of the opinion that the language of the statute will not permit of this construction. It is a mere fiction to say that the bookkeeping transaction of transferring money from one fund to another constitutes the cost of the claim to the industrial accident fund. It amounts to nothing more than setting up a reserve to meet a contingent liability, and until money is actually paid out to the claimant no cost has been incurred, unless it be in some technical, accounting sense which we cannot think was in the mind of the legislature.

The suggestion that the employer could obtain a refund of the unexpended balance without resorting to litigation seems to us devoid of merit. Commissions and bureaus are not notorious for parting voluntarily with money which has come into their hands, and frequently they are justified in taking the position that they lack authority to refund it.

If the law means that the employer is entitled to a refund of the unexpended balance, but must depend upon the voluntary action of the commission for his redress, then it comes within the condemnation pronounced by the supreme court of the United States

more than 50 years ago when it declared that in "a government of laws, and not of men," no man can be compelled to hold any material right at the mere will of another: *Yick Wo v. Hopkins*, 118 U. S. 356 (30 L. Ed. 220, 6 S. Ct. 1064). The legislature, however, said nothing about a refund of any unexpended balance to the delinquent employer, and we do not feel at liberty to read such a provision into the statute.

If it were possible to give to the statute the meaning for which the commission contends, and without any right of refund of the unexpended balance, its constitutionality would be open to serious question for another reason. In each case, the amount of the unexpended balance would constitute a penalty, at least in the broad meaning of that term. See *Huntington v. Attrill*, 146 U. S. 657 (36 L. Ed. 1123, 13 S. Ct. 224). It is said in *Cigar Makers' International Union v. Goldberg*, 72 N. J. L. 214 (61 Atl. 457, 111 Am. St. Rep. 662, 70 L. R. A. 156) : "The fixing of the precise legal penalty to be imposed, must be essentially either a legal function, in which only general considerations can have weight, or a judicial function, in which general considerations may be modified by special circumstances." In that case, a law providing for the imposition of a penalty was held to violate the guarantee of due process, because in effect it conferred upon the party for whose benefit the penalty was to be exacted the power to fix the amount. The principles announced in that decision are also stated in 12 C. J. 1247, § 1031, and 21 R. C. L. 216, § 11.

■ "The constitutionality of a statute must be determined by what can be done under it and not by what actually takes place.": *Hood River Lumbering Company v. Wasco County*, 35 Or. 498, 512 (57 P. 1017, 1021) ; *Purple Truck Garage Company v. Campbell*, 119 Or. 484, 491 (250 P. 213, 51 A. L. R. 816) ; *Sterrett & Oberle*

*Packing Co. v. Portland*, 79 Or. 260 (154 P. 410) ; *Leffingwell v. Lane County*, 64 Or. 144 (129 P. 538). In this case the amount of the reserve transferred to the segregated accident fund for payment of the plaintiff's compensation is $955.89. The plaintiff might have died without survivors, after one payment to him of $50. Under those circumstances, if judgment had been entered against the intervenor on the commission's theory, and collected, the industrial accident fund would have been enriched at the intervenor's expense in the amount of $905.89. Thus, the amount of the penalty would be determined, not by the legislature nor through the exercise of the judicial function but, by chance, by the decrees of providence and of the industrial accident commission. The penalty would have no relation, reasonable or otherwise, to the gravity of the individual dereliction. It would fall upon one person lightly and another heavily, for precisely the same omission of duty, and in cases where the injury to workmen and the awards of compensation were identical. This would not be due process of law.

■■ The contention has been pressed upon us by counsel for the intervenor, and counsel amicus curiae, that the statute is invalid because there is no casual connection between the failure of an employer to give the required notice and the injury to the workman. We believe this to be a consideration quite beside the mark. The Oregon workmen's compensation act is an exercise of the state's police power (*New York Central Ry. v. White*, 243 U. S. 188 (61 L. Ed. 667, 37 S. Ct. 247, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629) ; *Rohde v. State Industrial Accident Commission*, 108 Or. 426, 438 (217 P. 627).), and it is within the competency of the legislature to enact all laws reasonably necessary or useful for the carrying out of its objects

and purposes, and which do not infringe upon the constitutional rights or immunities of the individual. The industrial accident fund is created through contributions from employers and employees, and the legislature has, acting within its undoubted powers, imposed a duty upon all employers who engage in a hazardous occupation to notify the commission thereof, so that the latter may inspect the employer's pay rolls and prevent evasion of the obligation to make contributions to the fund, and accomplish other legitimate purposes not necessary to be detailed here.

As a means of enforcing obedience to this requirement, the legislature has declared failure to give this notice to be a misdemeanor, punishable by fine, and has further provided that the offending employer shall not be entitled to the benefits or protection of the act: Section 49-1822, Oregon Code 1930. The legislature may even go further, and subject the same violation to both a penalty and a criminal prosecution, this not being a two-fold punishment of the same offense: 25 C. J. 1179, § 74. The amount of such penalty is within the sound discretion of the legislature: 25 C. J. 1180, § 75.

We are not, therefore, to be understood as holding that the legislature is without power to impose upon an employer, who neglects to give the required notice, a civil liability for his delict, but merely that the present statute, when invoked against an employer before the extent of the liability to which he may be subjected has been determined, is incapable of enforcement. Neither do we express any opinion upon the objection which has been urged, that the amount of the exaction, viewed as a penalty, is excessive, and for that reason constitutes the taking of property without due process of law. Upon that question we go no further than to

say that decisions such as *Ex parte Young,* 209 U. S. 123 (52 L. Ed. 714, 28 S. Ct. 441, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764), cited by counsel amicus curiae, have no application here. These cases hold, in effect, that a statute, which subjects persons or corporations to such unreasonable or excessive penalties for their violation as to intimidate such persons or corporations and to deter them from contesting the validity of the statute in the courts, is unconstitutional. The penalty is imposed for failure of the individual to pay some debt which he claims he does not owe, or to perform some act which he claims he cannot lawfully be required to perform—an element which is not present in this case. It is not contended here that the legislature lacks the power to require employers engaged in a hazardous occupation to notify the industrial accident commission of that fact.

For the reasons herein given, the judgment of the circuit court must be affirmed.

BELT, BAILEY and RAND, JJ., concur.