Argued December 6, 1944; affirmed January 31, 1945

# M & M WOOD WORKING CO. ET AL. *v.*
## STATE INDUSTRIAL ACCIDENT
### COMMISSION ET AL.

(155 P. (2d) 933)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*H. Lawrence Lister,* Special Assistant Attorney General (George Neuner, Attorney General, H. Lawrence Lister, and Elliott B. Cummins, Assistant Attorneys General, on the brief), for appellants.

*Eugene Oppenheimer,* of Portland (Wilbur, Beckett, Oppenheimer, Mautz & Souther, of Portland, on the brief), for respondents.

BELT, C. J.

This is a suit to obtain a judicial declaration that Chapter 416, Oregon Laws for 1943, as applied to the plaintiffs, is unconstitutional, and for a decree enjoining the enforcement thereof.

The act in question is an amendment of two sections of the Workmen's Compensation Law and is entitled An Act

> "To amend section 102-1736, O. C. L. A., as amended by chapter 312, Oregon Laws, 1941, and section 102-1784, O. C. L. A., relating to workmen's compensation, and providing for a contribution from employers for safety work and enforcement of the safety statutes by the industrial accident commission."

Section 1, so far as material herein, provides as follows:

"Every employer subject to this act shall pay to the commission on or before the fifteenth day of each month a percentage of his total payroll for the preceding calendar month of workmen subject to this act according to and at the rates promulgated by the commission and shall pay to the state industrial accident fund on July 1, 1941, and annually thereafter, a minimum fee in the sum of five dollars ($5), which minimum fee shall be credited toward such employer's contribution for that year. Any employer who elects not to be subject to this act as provided in section 102-1712 shall, at the end of each calendar quarter, pay to the commission an amount equal to $2\frac{1}{2}$ per cent of the base rate contribution for the industry said employer is engaged in or such lesser amount as the commission may determine, said payments to be set aside and used for the sole purpose of carrying out the safety program among the employers who have elected not to be subject to this act; provided, that the commission shall waive such payments with respect to any employer when it has determined that such employer is carrying on a safety program as adequate as that required by the department of labor and that the state industrial accident commission. * * * * * *".

Section 2:

"It shall be the duty of the industrial accident commission to investigate all cases where they have reason to believe that employers, except those employers subject to the federal safety appliance act, have failed to install or maintain any safety appliance, device or safeguard required by statute and in all cases of failure on the part of any such employer to comply with such safety statute to order said employer immediately so to do. Any such employer who fails within a reasonable time to carry

out any order of the commission to comply with the safety statute shall be required to discontinue operations until said operations do comply with the safety statute. The state industrial accident commission hereby is authorized to appoint special representatives, who shall be empowered to enforce the law relating to safety appliances and safe places of employment, and to inspect and investigate all places of industry which are defined by law as hazardous occupations. * * *."

Plaintiff corporations are engaged in the hazardous occupation of manufacturing various plywood products in the city of Portland. Power driven machinery is operated and numerous workmen are employed. Both companies have rejected the Workmen's Compensation Act and have never contributed to the State Industrial Accident fund.

It is conceded that plaintiffs' manufacturing plants are safe places in which to work and that they have "practically eliminated all structural and mechanical hazards". It is further admitted that "the safety program carried on by the plaintiffs at their said plants or establishments are more adequate than that required by the Department of Labor of the State of Oregon and the State Industrial Accident Commission."

Never since the original enactment of the Workmen's Compensation Law in 1913 has the commission undertaken to exercise any dominion or control over employers engaged in hazardous occupations who were not contributors to the State Industrial Accident fund. The purpose of the 1943 amendment to the Workmen's Compensation Law was to obtain funds from such employers to be used in the furtherance of a "safety program" for the protection of workmen engaged in hazardous employment. Prior to such amend-

ment, only employers operating under the provisions of the Workmen's Compensation Act were required to contribute to the Industrial Accident fund for the purpose of carrying out such "safety program".

It is well at this juncture, in order to comprehend the legal questions involved herein, to direct attention to Chapter 48, Oregon Laws for 1920, requiring "every employer" to furnish a safe place in which to work and providing for safety devices and safeguards reasonably adequate to protect the life and safety of employees. For the purpose of clarity and brevity, this act will be hereafter referred to as the "Safety Act", although in the act itself it is not so designated nor is it given any other name. It is clear that the act, so far as it pertains to the safety of employees, is applicable to every employer whether subject to the Workmen's Compensation Act or not. The State Industrial Accident Commission is authorized to enforce the provisions of the act and to establish and promulgate reasonable rules and regulations. Whether it was the duty of the State Industrial Accident Commission to enforce the provisions of the act as against employers who had rejected the Workmen's Compensation Act is doubtful but, under any view, it is unnecessary to decide such question in this case.

The 1920 "Safety Act" was not an amendment of the Workmen's Compensation Act, but a separate and independent enactment. Section 17 thereof provides:

"All expenses incurred by the commission under the provisions of this act shall be paid out of the industrial accident fund, and all fines imposed and collected under prosecutions for violations of the provisions of this act shall be paid into the industrial accident fund."

Since the expense incurred by the commission under the act was to be paid from a fund in which employers rejecting the Workmen's Compensation Act had not contributed, no part of such fund—in keeping with the opinion of the Attorney-General—was used to carry on a "safety program" as to such non-contributing employers.

It will thus be seen that the legislature, in the enactment of the 1943 amendment, has placed employers subject to the Workmen's Compensation Act and employers who have rejected such act in separate and distinct classes. Plaintiffs assert that there is no reasonable basis for such classification and that it therefore violates the Fourteenth Amendment to the federal Constitution and Article I, Section 20, of the Constitution of Oregon, guaranteeing equal protection of the laws. Having in mind that the purpose of such "safety program" is for the protection of workmen engaged in hazardous employment, we are unable to conceive of any reasonable ground for making the classification. Certainly it will not be contended that there will be any substantial difference in the nature and character of the "safety program" whether contributing or non-contributing employers are involved. Neither can we see that there will be any substantial difference in the cost of inspection in order for the commission to determine whether there has been a compliance with the rules and regulations promulgated by it to enforce the provisions of the "Safety Act", whether such inspection applies to an employer operating under the Workmen's Compensation Act or an employer who has rejected such act.

Assume that A—a contributing employer—and B—a non-contributing employer—are engaged in the same

kind of manufacturing business in the city of Portland; that such employers maintain the same standard of safety appliances and regulations; that the employment is of the same hazardous character; and that there is no material difference in the number of workmen employed.

How does the act operate as to the employers in the above hypothetical case? As applied to them, do they make equal contribution to the fund for the same service? Or, is there such a substantial difference in the amounts contributed by them as to result in arbitrary discrimination rather than in legal classification?

It will be recalled that it is the duty of the State Industrial Accident Commission to enforce the provisions of the 1920 "Safety Act". Section 102-1708, O. C. L. A., as amended by Chapter 292, Oregon Laws, 1941, in so far as material herein, provides that:

"* * * The total expense of administration of the commission for any fiscal year ending June 30 shall not exceed 12½ per cent of the receipts to the industrial accident fund for that period, said 12½ per cent to be apportioned as follows: Not to exceed 10 per cent for general administrative purposes; not to exceed 2½ per cent for the purpose of administering the provisions of sections 102-1228 to 102-1246, O. C. L. A., inclusive." (Safety Act).

That part of the Industrial Accident fund used for safety purposes is not made up entirely from contributions of employers subject to the Compensation Act. A substantial part of such fund consists of contributions by employees. Such fund also includes fines collected by reason of violation of the "Safety Act". As to employers subject to the Workmen's Compensation Act, the rate of contribution to the fund may be substantially reduced by reason of the experience rating

of the employer, as provided in § 102-1738, O. C. L. A., as amended by Ch. 311, Oregon Laws 1941, and Ch. 160, Oregon Laws 1943. Such employers, in effect, contribute "not to exceed 2½ per cent of the industrial accident fund" for safety purposes, whereas other employers engaged in the same hazardous business, but who have rejected the Workmen's Compensation Act, are compelled, under § 1 of the 1943 act in question, to contribute an amount equal to 2½ per cent of the base rate, or "such lesser amount as the commission may determine". The employer not operating under the Compensation Act does not have the benefit of experience rating and, therefore, is not entitled to any reduction of the base rate of contribution. Nor is the amount such employer is obliged to pay into the fund affected by contributions of employees or by the collection of fines. Obviously, there is a substantial difference in the amounts which employers, under the act and those who have rejected it, contribute to the industrial fund for safety purposes, although they are engaged in the same hazardous business.

Under § 1 of the 1943 act in question, the payments made by such plaintiff employers are to be set aside and used for the sole purpose of carrying out the safety program among the employers who have elected not to be subject to the act. Are we to understand that the character of the safety program depends upon whether the employer is under the Compensation Act or not? If so, is such classification reasonable or is it, having in mind the purpose and object of the law, wholly artificial?

Further, it is observed that contributions of employers under the Compensation Act must, by virtue of § 102-1708, O. C. L. A., as amended, be used to admin-

ister the provisions of the "Safety Act" (§§ 102-1228 to 102-1246, O. C. L. A., inclusive), whereas employers not under the Compensation Act must, under the 1943 amendment, continue to make contributions to the fund until the Commission has determined that such employer is carrying on a safety program as adequate as that required by the Department of Labor and the State Industrial Accident Commission. In other words, the employer not under the Compensation Act has to comply with the safety programs of two commissions if there is a waiver of contributions. Just why this additional burden is imposed upon one class and not upon another engaged in the same business is difficult to understand, unless the object is indirectly to compel all employers engaged in hazardous occupations to operate under the Workmen's Compensation Act.

If the Industrial Accident Commission is to exercise such control and supervision over employers who have rejected the Compensation Act, it would seem that the expense of carrying on the same "safety program" should be borne equally by all employers engaged in the same hazardous business, whether under the act or not.

■ There is a wide legislative discretion in the matter of classifications and, if there is any reasonable basis which can be conceived therefor, courts will not interfere. However, such legislation can not be sustained unless there is some material difference between the classes: 12 Am. Jur. 151, Const. Law, § 481. As was well said in *Sterrett & Oberle Packing Co. v. Portland*, 79 Or. 260, 154 P. 410, 415:

"To justify classifications for the purpose of legislation whereby several classes are affected dif-

ferently by the law, there must be some reasonable ground for the classifications. There must be some difference between the classes which bears a just and proper relation to the purposes of the law and to the classifications: Gulf etc. Co. v. Ellis, 165 U. S. 150 (41 L. Ed. 666, 17 Sup. Ct. Rep. 255); State v. Wright, 53 Or. 344 (100 Pac. 296, 21 L. R. A. (N. S.) 349); Kellaher v. Portland, 57 Or. 575-584 (112 Pac. 1076); State v. Loomis, 115 Mo. 307 (22 S. W. 350, 21 L. R. A. 789); Dobbins v. Los Angeles, 195 U. S. 223 (49 L. Ed. 169, 25 Sup. Ct. Rep. 18).''

Also, to the same effect, see *Portland Van & Storage Co. v. Hoss,* 139 Or. 434, 9 P. (2d) 122, 81 A. L. R. 1136; *State v. Kozer,* 116 Or. 581, 242 P. 621.

■ Undoubtedly, the Legislature has the power, for certain purposes, to classify employers into two groups: (1) Those who contribute to the fund, and (2) those who elect not to contribute thereto. Those who are operating under the Compensation Act are not subject to personal injury actions by their employees, whereas non-contributing employers are subject to such actions. It does not follow, however, that, because the above classification has been sustained, the classification for the purpose of a ''safety program'' is reasonable. A classification, to be constitutional, must be based upon substantial distinctions and be germane to the purpose of the law. In the instant case, the purpose of the ''Safety Act'' was the protection of workmen engaged in hazardous employment. It is plain that the classification made by the 1943 amendment has no reasonable relation to the end sought to be attained by such law. To divide employers in the same industries into two classes based upon whether or not they contribute to the Industrial Accident fund, when the effect of the classification is to require one class to

pay a higher inspection fee than the other, is arbitrary and unreasonable, where the purpose of the inspection is to determine whether the premises are safe for employees working therein. We conclude that equal protection of the laws has been denied to plaintiff employers as the result of an arbitrary classification.

■ How does the act in question affect members of the same class of employers who have rejected the act? Clearly, if it permits arbitrary and unfair discrimination as to any member of the same class, the constitutionality thereof can not be sustained. As said in 12 Am. Jur. 144, Constitutional Law § 478:

> "A fundamental principle involved in classification is that it must meet the requirement that a law shall affect alike all persons in the same class and under similar conditions. * * *"

Authorities supporting this well established legal principle are legion. Among them are: *State v. Wright,* 53 Or. 344, 100 P. 296, 21 L. R. A. (N. S.) 349; *Stearns v. Chicago,* 368 Ill. 112, 13 N. E. (2d) 63, 114 A. L. R. 1507; *Bolivar Township Bd. of Finance v. Hawkins,* 207 Ind. 171, 191 N. E. 158, 96 A. L. R. 271; *Ex parte French,* 315 Mo. 75, 285 S. W. 513, 47 A. L. R. 688; *State ex rel. v. Levitan,* 190 Wis. 646, 210 N. W. 111, 48 A. L. R. 434.

The commission, under section 1 of the act challenged, is authorized to reduce the 2½ per cent of the base rate contribution to "such lesser amount as the commission may determine". The act provides no standard or rule for the guidance of the commission in determining the amount of reduction to the employer. As to one employer, it may be to 2% of the base contribution; whereas, another may be obliged to pay only 1% thereof. It is argued that the amount of reduction is determined by the cost of administering the act. Suf-

fice it to say, the act does not so provide and we can not read into it the suggested standard.

■ It may be assumed that the commission—being composed of capable and conscientious officials—would administer the act equitably under such rule of guidance but, after all, the constitutionality of a statute "must be determined by what can be done under it and not by what actually takes place": *Bell v. State Industrial Accident Commission*, 157 Or. 653, 74 P. (2d) 55. In other words, we must consider the statute by what it authorizes and permits to be done: *Purple etc. Co. v. Campbell*, 119 Or. 484, 250 P. 213, 51 A. L. R. 816. Obviously, without any statutory rule to govern its action, a commission has the power to deal arbitrarily and unjustly with an employer if it be inclined to do so.

■ The act purports to delegate legislative authority to a commission or administrative board without any rule or standard fixed for its guidance in determining the amounts employers who have rejected the Compensation Act are compelled to pay and, therefore, violates Art. III, § 1, of the Constitution of Oregon; *Savage v. Martin*, 161 Or. 660, 91 P. (2d) 273; *City of Portland v. Welch*, 154 Or. 286, 59 P. (2d) 228, 106 A. L. R. 1188; *Van Winkle v. Fred Meyer, Inc.*, 151 Or. 455, 49 P. (2d) 1140.

The validity of this vague, indefinite, and loosely drawn act is challenged on other grounds—some of which offer much food for thought—but, in view of what has been said, it is unnecessary to consider them.

The decree of the circuit court invalidating the act as applied to plaintiffs and enjoining the enforcement thereof, is affirmed. Plaintiffs are entitled to costs and disbursements.

BRAND, Justice, concurs in the result.