Argued February 24, affirmed June 17, 1954

M & M WOOD WORKING COMPANY ET AL. *v.*
STATE INDUSTRIAL ACCIDENT
COMMISSION
271 P. 2d 1082

*Gordon Moore,* of Portland, argued the cause for appellants. On the brief were Wilbur, Mautz, Souther & Spaulding, of Portland.

*Ray H. Lafky,* Assistant Attorney General, of Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, of Salem, Green, Richardson & Green, and Paul T. Bailey, all of Portland, and Allan G. Carson, of Salem.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, BRAND and PERRY, Justices.

BRAND, J.

This is a suit for a declaratory judgment. The plaintiffs seek a declaration that Section 4 of Chapter 343, Oregon Laws 1951 is unconstitutional and pray for an order enjoining the defendants, State Industrial Accident Commission and other officials, from enforcing that chapter. A general demurrer was filed

and sustained and judgment was rendered to the effect that no constitutional rights of the plaintiffs are violated by said Chapter 343. The prayer for injunction was denied, the suit dismissed, and plaintiffs appeal. The amended complaint alleges that each of the plaintiffs employs numerous workmen, operate power-driven machinery, are subject to the Factory Inspection Law, are engaged in hazardous occupations within the meaning of the Workmen's Compensation Law and have filed the statement as authorized by law declaring their intention not to contribute to the State Industrial Accident Fund. The plaintiffs allege that they have

"established and maintained a comprehensive safety program for the protection of the employees of the respective plaintiffs and other persons who have occasion to be in and about the respective establishments of the respective plaintiffs and for said purpose each of said plaintiffs has for a number of years last past, availed itself or himself of the services of private insurance carriers, the same being organizations operating and carrying on insurance businesses in the State of Oregon for the purpose of looking after the prevention of accidents and safety programs for employers engaged in hazardous occupations. Said private insurance carriers employ engineers and others who are highly skilled in making plants, mills, factories and workshops and other places of employment safe for employees working therein and in protecting employees and others from accidents and exposure to occupational diseases, and each plaintiff herein uniformly follows the reports, recommendations and findings of said experts and others so employed to carry on such programs, and each plaintiff herein has expended a large amount of money in the establishment and carrying on of such respective programs and in making its establishments and places of business safe places in which to work and the

place of business of each of the plaintiffs herein is, so far as possible, a safe place in which to work. The safety programs so carried on by the respective plaintiffs herein at their respective establishments and places of business are each more adequate than that required by the Department of Labor of the State of Oregon and the State Industrial Accident Commission.''

The complaint then sets forth Chapter 343, Laws of 1951 which is codified as a part of the Factory Inspection Law, ORS 654.205 to 654.275 inclusive. For convenience we shall cite the statute as codified:

"As used in ORS 654.205 to 654.275, unless the context requires otherwise:

"(1) 'The commission' means the State Industrial Accident Commission.

"(2) 'The Factory Inspection Law' means ORS 654.205 to 654.275 and subsections (3) and (4) of ORS 654.990.

"(3) 'Place of business' means the premises at which work of an employer subject to the Factory Inspection Law is carried on. Each separate general location where logging operations are conducted under the same conditions, and each separate location of other work shall be considered a place of business." ORS 654.205.

Section 654.210 to 654.220 inclusive impose rules for persons operating factories, mills and workshops where machinery is used. ORS 654.225 provides for inspection by the State Industrial Accident Commission, hereafter referred to as the Commission. Other sections establish enforcement provisions with which we are not now concerned. ORS 654.255 reads as follows:

"Every employer subject to the Factory Inspection Law shall pay to the commission annually on

January 1 for each place of business operated by him in which are regularly employed:

"(1) Not more than two persons, $2.

"(2) Not less than three nor more than seven persons, $1 per person employed.

"(3) Not less than eight nor more than 20 persons, $12.50.

"(4) Not less than 21 nor more than 40 persons, $20.

"(5) Not less than 40 nor more than 100 persons, $25.

"(6) Not less than 100 nor more than 500 persons, $50.

"(7) Not less than 500 nor more than 1,000 persons, $75.

"(8) More than 1,000 persons, $100."

Section 4 of Chapter 343, Oregon Laws 1951, which is under attack as unconstitutional is now ORS 654.270. It reads as follows:

"The commission may waive payment of the fees provided for in ORS 654.255 by any employer subject to the workmen's compensation law if there is a comparable inspection and payment therefor at least equal to such fees."

The last section of the Factory Inspection Act is as follows:

"There hereby is established in the General Fund of the State Treasury the Safety Inspection Account. All moneys collected under ORS 654.255 to 654.270 and all fines collected for violations of the Factory Inspection Law shall be paid by the commission to the State Treasurer and by him credited to the Safety Inspection Account. All payments so made hereby are appropriated for the purpose of carrying out the Factory Inspection Law."

The complaint alleges the defendants have demanded that the plaintiffs pay the fees imposed by ORS 654.255 and have threatened enforcement action if the fees are not paid. It is alleged that the defendants threaten to send inspectors to examine the plaintiffs' plants and exercise dominion and control so as to force plaintiffs to become contributors to the State Industrial Accident Commission. The plaintiffs have refused to comply with the statute or have complied only under protest for the reason that the statute is deemed to be unconstitutional. The particulars in which the act is alleged to be unconstitutional are (1) that it constitutes an unconstitutional delegation of legislative power; (2) that there is no adequate standard fixed by statute for determining what is a "comparable inspection" (see ORS 654.270 supra); (3) that the act deprives plaintiffs of liberty and property without due process of law, abridges their privileges and immunities and deprives them of equal protection of law "in that the fee provided for in Section 3 of the purported Act [ORS 654.255] is not to apply equally to employers subject to the Workmen's Compensation Act and to employers who have elected not to be subject to said * * * Act, and said classification is wholly unreasonable and treats employers who have rejected said * * * Act differently than employers who have accepted said Act." In substance it is alleged that the act creates an arbitrary classification. Similar contentions are made under the provisions of Oregon constitution, Article I, Section 20, which provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

It is alleged that a controversy exists between the parties and that a declaration of rights is necessary.

The first ground for demurrer was that the court was without jurisdiction. The trial court, however, found that a justiciable controversy existed and it therefore took jurisdiction of the case. Both parties have presented the case in this court on the merits. The only issue presented is the one raised by the general demurrer in support of which plaintiffs challenge the constitutionality of ORS 654.270 which authorizes the commission to waive payment of fees provided for in ORS 654.255 by any employer subject to the Workmen's Compensation Act if there is a comparable inspection and payment therefor at least equal to such fees.

The allegations of the complaint which purport to show a justiciable controversy are to the effect that the defendant commission threatens to compel the plaintiffs to pay the fees imposed by ORS 654.255 of the Factory Inspection Law, yet the plaintiffs allege that they are subject to that law. If ORS 654.270 (the waiver section) had been omitted from the statute, the plaintiffs would have had no ground on which to challenge the act. All who came within the purview of the statute would be compelled to pay the fees and the plaintiffs could not avoid payment of those statutory fees merely by voluntarily purchasing similar service from private insurance carriers. Their voluntary action could not derogate from the power of the state to require inspection; to insure compliance with the law. The fact that the plaintiffs are now employing private insurance carriers and maintaining adequate safety programs is immaterial so far as it concerns their duty to pay the fees imposed by the Factory Inspection

Act. The provision imposing inspection fees is clearly valid unless that provision is rendered unconstitutional, because of the section authorizing the waiver of those fees as to employers other than the plaintiffs who are operating under the compensation act.

We are advised that the defendants moved the court for an order directing that the complaint be made more definite and certain by setting forth the number of places of business and the number of employees employed and the occupations in which they are engaged and the wages paid "in order that it may appear from the complaint whether plaintiff's fee payments pursuant to the factory inspection law would result unfavorably to plaintiff as compared to a similar employer subject to the Workmen's Compensation Law." The motion was denied and it is therefore impossible for us to know to what extent the plaintiffs are subjected to inspection or the amount of the inspection fees which they are required to pay and it is also impossible for us to know whether other inspections and payments therefor are comparable to the inspections and fees imposed upon the plaintiffs. We must, it would seem, uphold the decision of the lower court unless we can say, from the inspection of the complaint and the statutes, first, that the defendant commission will waive the statutory fees as to some employers who operate under the Workmen's Compensation Law, and second, that when the facts are presented to the commission it will be impossible for them to determine the extent of the inspections of the plaintiffs and the fees paid therefor on the one hand, and the extent of inspections and the payments therefor in the case of employers operating under the Workmen's Compensation Law on the other. No such impossibility appears either from complaint or statute.

Nor is there any allegation that the defendant commission has waived any fees or threatens to do so.

The impact of the various constitutional provisions can be appraised only after a review of other statutes which apply to the parties. We must first determine what is meant by the phrase which is found in the waiver section, namely, "any employer *subject to the Workmen's Compensation Act.*" (Italics ours.) The code provides that

> "All persons engaged as employers in any of the hazardous occupations specified in ORS 656.082 to 656.086 *shall be subject* to ORS 656.002 to 656.590 [The Workmen's Compensation Law] * * * provided, that any such employer may be relieved of certain of the obligations imposed by those statutes * * * by filing with the commission written notice of an election *not to be subject thereto* * * *." ORS 656.022. (Italics ours.)

■ It is apparent that the waiver section of the Factory Inspection Law, in speaking of employers subject to the Workmen's Compensation Law, refers to employers who are operating under it and have not elected to reject that law.

On its face the statute provides that the plaintiffs who have rejected the benefits and avoided the burdens imposed by the Workmen's Compensation Law and who therefore do not contribute to the Industrial Accident Fund, must pay the inspection fees imposed by the Factory Inspection Law in ORS 654.255. As to employers who, unlike the plaintiffs, have accepted the Workmen's Compensation Act and who are therefore contributing to the Industrial Accident Fund, the commission may waive the payment of fees under the Factory Inspection Act if, but only if, there is a comparable inspection and payment therefor at least equal

to the fees required of plaintiffs who have rejected the compensation act and are subject to the Factory Inspection Act. The question is: What inspections and what payments are referred to in ORS 654.270 which are to be comparable to the fees imposed by the Factory Inspection Act?

Under the waiver statute the comparison is to be made between the inspection to be made under the Factory Inspection Act and inspections made of the facilities of employers operating under the compensation act, and between the fees paid by plaintiffs for inspections under the Factory Inspection Act and the payments made for inspection by the employers operating under the compensation act.

Under the statute, unless the commission finds that employers who are operating under the compensation act are subjected to inspection comparable to that provided by ORS 654.225 of the Factory Inspection Act, *and,* unless such employers are paying for such inspection in amounts at least equal to the fee charged the plaintiffs under the Factory Inspection Act, the commission cannot waive any payment of inspection fees under that act for the benefit of any employer who is operating under the compensation act, no matter how much the latter may be contributing to the Industrial Accident Fund or how little the plaintiffs may be contributing to that fund. If a finding cannot be made conformable to this rule, then there will be no waiver of payments and no discrimination and no violation of constitutional right. If the comparison can be made and it can be found that employers under the compensation act are receiving inspection and making payments therefor which are comparable to the inspection and fees charged the

plaintiffs, then again there is no violation of the plaintiffs' rights of equal protection under the law, because, under those conditions there would exist a sound basis for classification. It is clear that the employer who contributes to the accident fund and is inspected and pays therefor is in a different class from the plaintiffs who do not contribute to the fund and who pay only under the Factory Inspection Act.

■ We hold that the test of comparability is not too indefinite for application by the commission. The word "comparable" has been held to mean substantially equal. *Mason v. Woods,* 172 F2d 857, 860; *Landon Terrace v. Creedon,* 162 F2d 722, 728; *Sirianni v. Bowles,* 148 F2d 343, 344. The condition under which alone an order waiving payment of fees could be made is that inspection of employers under the Workmen's Compensation Law be found substantially equal to that provided for under the Factory Inspection Act, and that payments made for such inspection be at least as large as the inspection fees prescribed under the Factory Inspection Act. We have before us only the statute and the complaint. In view of the reports which are required of employers and the inspections and records made and kept by the commission, we find nothing in the law or in the complaint from which we could say that the inspections and payments therefor by persons under the compensation act cannot be ascertained or that when ascertained, they cannot be compared with the inspections and fees required of persons who have rejected the compensation act. If the comparison can be made, then it is also possible to determine whether there is substantial equality.

Under the general safety act, ORS 654.005 to 654.180, the general safety requirements are broader

than the specific provisions of the Factory Inspection Act. Under the safety act

"(1) The commission is vested with full power and jurisdiction over, and shall have such supervision of, every employment and place of employment in this state as may be necessary adequately to enforce and administer all laws and all lawful orders requiring such employment and place of employment to be safe, and requiring the protection of the life and safety of every employe in such employment or place of employment.

"(2) The commission may make, establish, promulgate and enforce all necessary and reasonable rules, regulations and provisions for the purpose of carrying ORS 654.005 to 654.100 into effect and in reference to the investigation of all violations of said statutes * * *

* * * * *

"(4) The commission may do and perform all things, whether specifically designated in ORS 654.005 to 654.100 or in addition thereto, which are necessary or convenient in the exercise of any power, authority or jurisdiction conferred upon it by ORS 654.005 to 654.100." ORS 654.025.

The commission may "Fix reasonable standards and prescribe, modify and enforce such reasonable orders for the adoption, installation, use, maintenance and operation of safety devices, safeguards and other means or methods of protection * * *." ORS 654.035. The commission is empowered to make necessary orders when it finds that any place of employment is not safe. ORS 654.045. It may prohibit the use of machines, etc., "upon finding any violation * * *." ORS 654.050. It is provided in the safety code that "All expenses incurred by the commission under ORS 654.005 to 654.100 shall be paid out of the Industrial Accident Fund. All fines imposed and col-

lected under prosecutions for violations of ORS 654.005 to 654.100 shall be paid into the Industrial Accident Fund." ORS 654.095. It is further provided that

"(1) The State Industrial Accident Commission shall make such inspections and take such other action as may be necessary to enforce and assure compliance with all orders, rules or regulations made or prescribed by the Public Utilities Commissioner of Oregon pursuant to ORS 757.035, and by the Industrial Accident Commission pursuant to ORS 654.035, applicable to standards of construction, maintenance and operation of electric lines and appurtenances, and to work on and about such lines and appurtenances." ORS 654.155.

The foregoing provisions and especially those investing the commission with power, jurisdiction and supervision over places of employment necessarily imply the right and duty to inspect. Turning to the provision of the Workmen's Compensation Act, ORS 656.002 et seq., we find that the commission is directed to investigate all cases where there is reason to believe that employers subject to that act have failed to install or maintain required safety devices. ORS 656.424. Concerning administrative expenses, it is required that

"The commission may incur such expenses as it determines are reasonably necessary in the administration of ORS 656.002 to 656.590, but the total expense of administration of the commission for any fiscal year ending June 30 shall not exceed 18 percent of the average annual receipts to the Industrial Accident Fund for the five previous years. Such 18 percent shall be apportioned as follows:

"(1) Not to exceed 13 percent for general administrative purposes.

"(2) Not to exceed five percent for the purpose of administering ORS 654.005 to 654.100." ORS 656.428.

The compensation act also specifies the amount of contribution which employers subject to the act shall pay into the Industrial Accident Fund. ORS 656.504 to 656.526. Having the right and duty to inspect the plants of employers operating under the compensation act, and having a substantial fund allocated from the Industrial Accident Fund to cover the expenses of administration, and being required, as the commission is, to keep account of such expenses, including costs of inspection, we cannot say that it is impossible for the commission to ascertain and determine whether the inspections which are made under the safety act and the compensation act are substantially equal to that made under the Factory Inspection Act, nor can we say that it is impossible for the commission to determine whether the money allotted from the Industrial Accident Fund for the purpose of administering the safety act and such portion thereof as should be allocated to the payment of inspection is at least as great as the small fees which are imposed upon the employers under the Factory Inspection Act.

The comparison suggested in the defendants' brief would tend to indicate that payments which may be allocated to inspection in the case of employers under the compensation act are at least as large as the fees paid by the plaintiffs under the Factory Inspection Law, and that the waiver, as authorized by ORS 654.270 would tend to equalize the burden between the two classes of employers rather than to discriminate against the group to which the plaintiffs belong.

■ Plaintiffs contend that this case is controlled by the decision in *M. & M. Wood Working Co., et al. v. State Industrial Accident Commission et al.*, 176 Or 35, 155 P2d 933, decided in 1945. In that case the plaintiffs sought a declaration that Chapter 416 of

the Laws of 1943 was unconstitutional under the same provisions of the fundamental law which are invoked here. The 1943 act differed materially from the one with which we are now concerned. It required employers subject to the Workmen's Compensation Act to pay to the commission a percentage on total payroll and then provided that

"* * * Any employer who elects not to be subject to this act as provided in section 102-1712 shall, at the end of each calendar quarter, pay to the commission an amount equal to 2-1/2 per cent of the base rate contribution for the industry said employer is engaged in or such lesser amount as the commission may determine, said payments to be set aside and used for the sole purpose of carrying out the safety program among the employers who have elected not to be subject to this act; provided, that the commission shall waive such payments with respect to any employer when it has determined that such employer is carrying on a safety program as adequate as that required by the department of labor and the state industrial accident commission. * * *" Oregon Laws 1943, Ch 416, p 623.

This is the act which was declared unconstitutional in our decision of January 1945. In 1947 the provisions of the 1943 act were repealed (Oregon Laws 1947, ch 567, p 1070), with an express provision that OCLA, § 102-1784 should not be repealed. That section was similar to Section 2 of Chapter 416 and imposed upon the commission the duty to investigate all cases where they had reason to believe that employers have failed to install or maintain required safety devices. OCLA, § 102-1784 was part of the Workmen's Compensation Law and is now ORS 656.424. The same 1947 repealing act also expressly retained as law Chapter 415

of Oregon Laws 1943 which is now ORS 656.504 and which requires contributions by employers operating under the compensation act, to the Industrial Accident Fund, based upon percentages of their payrolls. There was ample reason for holding the 1943 statute invalid. Referring to the provision which required employers who had rejected the compensation act to pay "2-1/2 per cent of the base rate contribution for the industry said employer is engaged in *or such lesser amount as the commission may determine * * *"* (Italics ours) this court said:

> "The act purports to delegate legislative authority to a commission or administrative board without any rule or standard fixed for its guidance in determining the amounts employers who have rejected the Compensation Act are compelled to pay and, therefore, violates Art. III, § 1, of the Constitution of Oregon; Savage v. Martin, 161 Or. 660, 91 P. (2d) 273; City of Portland v. Welch, 154 Or. 286, 59 P. (2d) 228, 106 A.L.R. 1188; Van Winkle v. Fred Meyer, Inc., 151 Or. 455, 49 P. (2d) 1140." 176 Or at 46.

This point alone was sufficient for the decision in that case.

The 1951 act which is now under attack adopts the test of substantial equality to be applied by the commission whereas the 1943 act contained no legislative test by which the commission should be guided in deciding whether to require payment of the 2-1/2 per cent or a "lesser amount". Again, the present law contains no provision for waiver of payments as to employers who are voluntarily carrying on a safety program as adequate as that required by the commission.

In the M. & M. Wood Working decision of 1945, supra, the court said:

"Never since the original enactment of the Workmen's Compensation Law in 1913 has the commission undertaken to exercise any dominion or control over employers engaged in hazardous occupations who were not contributors to the State Industrial Accident fund. * * *"

In that case the court also expressed doubt as to the duty of the commission under the law as it then was, to enforce the provisions of the safety act against employers who had rejected the compensation act. Whether the doubt which we expressed was well-founded is itself doubtful, but there can be no question at all as to the existence of such a duty under the present law. Plaintiffs rely upon the following excerpts from our 1945 opinion:

"Undoubtedly, the Legislature has the power, for certain purposes, to classify employers into two groups: (1) Those who contribute to the fund, and (2) those who elect not to contribute thereto. Those who are operating under the Compensation Act are not subject to personal injury actions by their employees, whereas non-contributing employers are subject to such actions. It does not follow, however, that, because the above classification has been sustained, the classification for the purpose of a 'safety program' is reasonable. A classification, to be constitutional, must be based upon substantial distinctions and be germane to the purpose of the law. In the instant case, the purpose of the 'Safety Act' was the protection of workmen engaged in hazardous employment. It is plain that the classification made by the 1943 amendment has no reasonable relation to the end sought to be attained by such law. To divide employers in the same industries into two classes based upon whether or not they contribute to the Industrial Accident fund,

when the effect of the classification is to require one class to pay a higher inspection fee than the other, is arbitrary and unreasonable, where the purpose of the inspection is to determine whether the premises are safe for employees working therein. * * *" 176 Or at 44.

The quotation is not pertinent to our present problem. The purpose of the Factory Inspection Law of 1951 is to provide inspection of all factories, mills and workshops where machinery is used and to exact fees to be paid into a factory inspection account to be used for the purpose of carrying out the provisions of the inspection law ORS 654.255 and 654.275.

■ Aside from the waiver provisions of ORS 654.270, the inspections and fees therefor are exacted from all employers operating factories, etc. where machinery is used, whether they are under the compensation act or not. But those who are under the compensation act are also required to contribute to the industrial accident fund, portions of which fund are also used to defray the costs of inspection. To subject employers under the compensation act to double exactions while those who have rejected the act are subjected to only a single exaction, would appear to violate the very rules of constitutional law on which the plaintiffs here rely. The obvious purpose of the waiver provision is to equalize so far as possible the burden of inspection costs between the two classes of employers. The purpose of the requirement for inspection in each case is to determine whether the safety provisions of the law are being carried out, but the effect of the classification and of the provision for waiver is not to require one class to pay a higher inspection fee than the other, as was indicated in our 1945 decision, but on the contrary, the waiver provision is

for the purpose of equalizing what would otherwise be a discriminatory rule against the employers who are under the compensation act.

We find it unnecessary to discuss the decisions cited by both parties concerning the limitation on the delegation of legislative power, the necessity that legislative standards be established for the guidance of administrative bodies or the decisions based on the constitutional mandate which forbid discriminations and hold that

> "To justify classification for the purpose of legislation whereby several classes are affected differently by the law, there must be some reasonable ground for a classification. There must be some difference between the classes which bears a just and proper relation to the purposes of the law and to the classifications." *Sterett & Oberle Packing Company v. Portland,* 79 Or 260, 154 P 410.

The principles cited by both parties are well established. *State v. Briggs,* 45 Or 366, 77 P 750, 78 P 361; *State v. Wright,* 53 Or 344, 100 P 296; *In re Willow Creek,* 74 Or 592, 144 P 505, 146 P 475; *Evanhoff v. State Industrial Accident Commission,* 78 Or 503, 154 P 106; *Sterett & Oberle Packing Co. v. Portland,* 79 Or 260, 154 P 410; *State v. Savage,* 96 Or 53, 184 P 567; *Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 49 P2d 1140; *Bell v. State Industrial Accident Commission,* 157 Or 653, 74 P2d 55; *Savage v. Martin,* 161 Or 660, 91 P2d 273; *State Industrial Accident Commission v. Goode,* 165 Or 237, 106 P2d 296. The authority of these cases is not questioned. They are not controlling here because we find nothing in the complaint or the statute which was either a violation or a threat to

violate the mandates of the constitution as defined in these cases.

■ We recently said that before the court will declare an act unconstitutional it must appear to be such beyond a reasonable doubt. *State ex rel. Powers v. Welch,* 198 Or 670, 259 P2d 112. Statutes are presumed to be constitutional and it is our duty to resolve doubts in favor of constitutionality whenever possible. *Swift & Co.* and *Armour & Co. v. Peterson,* 192 Or 97, 233 P2d 216; *Green v. Leckington,* 192 Or 601, 236 P2d 335.

The judgment of the circuit court which was based upon the showing made in the present case is affirmed.